## Abel Willard *v.* Town of Newbury.

The location of a rail road across a public highway, in pursuance of the power conferred by the charter of the rail road company, does not, while the rail road is in process of construction at that point, operate a discontinuance of the highway, but only a temporary suspension of the use.

The town, in such case, during the temporary obstruction of the highway by the construction of the railroad, must provide a suitable by-way for the public, and use all proper and reasonable precautions, to prevent travellers from passing upon the highway, while it remains unsafe.

The obligations imposed upon the Connecticut and Passumpsic Rivers Rail Road Company, by their charter, in the construction of their rail road across public highways, do not absolve the town, in which there is a highway, across which the railroad is located, from its duties and liabilities to the public;*—those continue obligatory upon the town, so long as the public highway remains such.

The question, whether a town has been guilty of want of ordinary care and diligence, in reference to the sufficiency of a public highway, is one of fact, to be determined by the jury.

In this case a rail road corporation located their road, in pursuance of their charter, across a public highway in the town of Newbury, and, in the process of constructing their road, made an excavation across the highway; both the corporation and the town took some measures to prevent travellers from passing over the highway, while it was thus unsafe; but, the jury having found a want of ordinary care and diligence on the part of the town, in *this respect*, a traveller, who, without fault on his part, suffered injury in consequence of the obstruction of the highway by the corporation, was held entitled to recover damages of the town therefor.

---

* The charter provides, that " If the said road shall, in the course thereof, cross any canal, turnpike, or other highway, the said road shall be so constructed, as not to impede, or obstruct, the convenient use of such canal, turnpike, or other highway ; and the said corporation shall have the power to raise or lower such turnpike, highway, or private way, so that the said rail road, if necessary, may conveniently pass under or over the same ; and if said corporation shall raise or lower any such turnpike, highway, or private way, pursuant thereto, and shall not so raise or lower the same, as to be satisfactory to the proprietors of such turnpike, or to the selectmen of the town in which said highway or private way may be situate, as the case may be, said proprietors, or selectmen, may require, in writing, of said corporation, such alteration, or amendment, as they may think necessary ;" and then follows a provision for redress, in case the corporation shall not comply with such requirement. Acts of 1835, page 95.

Willard *v.* Newbury.

TRESPASS ON THE CASE for an injury sustained by reason of the insufficiency of a public highway. Plea, the general issue, and trial by jury, June Term, 1849,—REDFIELD, J., presiding.

On trial the plaintiff gave evidence tending to prove, that there was an ancient highway in the town of Newbury, passing upon a ridge of land, with a descent on each side of thirty feet, or more; that the road was about twenty five feet in width; that the Connecticut and Passumpsic Rivers Rail Road Company located their rail road across said highway, and, in its construction, had made an excavation across the highway, thereby preventing all travel thereon ; that north of the excavation, for six or eight rods, the company had placed in the highway a quantity of large blocks of granite, for the purpose of constructing an arch, by means of which travellers on the highway might pass over the railroad; that the company, previous to making the excavation, had made a convenient by-way for the public travel, to the acceptance of the selectmen of the town, by repairing an old road, not previously much used ; that this by-way diverged from the highway about half a mile from the excavation, the curve of the two roads, at the point of divergence, being about equal ; that before the company commenced their excavation, they erected timbers across the highway, some rods north of the excavation, so as to intercept all travel, which they kept there most of the time, until the injury occurred to the plaintiff, and until the highway was filled with blocks of stone, as before stated ; that the plaintiff, coming from the north, with a horse and wagon, in a dark night, and having been a few years previously familiar with the road, and not knowing of any alteration, passed south, over the highway, and, as he approached the blocks of granite, his horse inclined to the east side of the road, to avoid the granite, and finally stopped; and that the plaintiff urged his horse forward, when the horse sprung to the west, to avoid going off the bank on the east side, by which movement the hind wheels of the wagon ran off the bank on the east side, and, with the body, separated from the forward wheels and went down the declivity, injuring the plaintiff.

The defendants gave evidence tending to prove, that, before the travel upon the highway was interrupted, they placed a guide board at the point where the by-way diverged, directing travellers to that road, and also placed a pole across the highway, at the same point,

elevated some feet above the surface of the road, which was kept up at all times, both night and day, so far as it was in the power of the officers of the town to do so; but it appeared, that this pole would be occasionally removed, and probably by persons who travelled the highway. The defendants also gave evidence tending to prove, that several families lived on the highway, between the point, where the by-way diverged, and the excavation,—one family living about fifteen rods north of the excavation, and that there was no way, in which they could travel from their dwellings to other parts of the town, except to pass north, over the highway; and that for this reason no permanent obstruction was placed across the highway, where the guide board was erected; and the evidence tended to prove, that if the rail road company had kept the timbers across the highway, where they first erected them, or if they had erected a barrier north of the place where they obstructed the road by the blocks of granite, the injury would not have happened to the plaintiff. It appeared, that there was no dwelling house between the place where the rail road company placed their obstruction and the excavation, and that it was necessary for the men to remove this barrier, which consisted of hewn timber, in order to draw the granite to the place where it was to be deposited, and that from this cause the barrier was frequently left down through the night, and that it was so left down, at the time the plaintiff was injured; and that the granite blocks, near to the excavation, were so placed, as nearly to cover the surface of the highway, but that near the barrier the road was but little obstructed by them.

The defendants requested the court to charge the jury, that the rail road company had the right, under their charter, to make the excavation above mentioned, and to obstruct the highway, so far as was necessary, to enable them to construct their road; but that it was the duty of the company to protect the public, as well as the town, against the consequences of their acts; and that, if the plaintiff was injured by reason of want of due care on their part, his remedy was against the company; and that, under the circumstances of this case, the plaintiff could not recover against the town, but should have brought his action against the company.

The court instructed the jury, that, the general laws of the state having imposed upon towns the duty of keeping the roads in repair,

Willard *v.* Newbury.

those who had occasion to travel had a right to expect of them the performance of that duty, so far as it could be performed, by common care and diligence; that the fact, that the rail road company had a right, by their charter, to make an excavation across the highway, would not relieve the town from the obligation to exercise reasonable care and watchfulness, to see that the public had a proper by-way to pass around the excavation, and that proper obstructions were placed and kept up, to divert the travel from the highway, where it was rendered dangerous by the rail road company, so far as this could be done by common care and diligence; and that, if the town intrusted this to the rail road company, and they omitted to do it faithfully, whereby injury occurred to the plaintiff, and he was himself guilty of no want of common care, the town were liable to the plaintiff, and he was not obliged to look to the company, even if they had also been negligent, and might so have become liable to any one suffering injury on that account.

Verdict for plaintiff.   Exceptions by defendants.

*Peck & Colby* for defendants.

The case shows, that the town were in no fault. All the means were used, to divert travel from the highway, which could reasonably be required.   Permanent obstructions would be impossible, which would preclude several families from communication with the rest of the town.

Was not the road so far discontinued temporally by the act of the town in placing the guide board and adopting the new road, built by the company as a substitute, as to shield the town from liability ?   *Tinker* v. *Russell,* 14 Pick. 279.

The rail road company may have been negligent, and yet the town not at all so.   The case contains no evidence, that the town relied upon the rail road company to maintain a barrier, or furnish a by-way.   The by-way was adopted by the selectmen, the guide board was placed by them, and the pole across the highway.   It is true, the company had placed timber across the road, before they began the excavation, and it appears, that it was kept in place almost constantly.   The town merely relied upon the timber being allowed to remain in its position; and they had a right to rely upon this; as the timber was placed by the company for the protection

of the public, the town had a right to rely upon it, that neither the company, nor any other person using the road, would leave the barrier down. It would have been precisely the same, *if the town* had placed the barrier; the company might still have left it down and this accident have happened. The company had a right to pass and repass there, in prosecuting their work, and so to remove the barrier, whether placed by the town, or the company; and there is no reason, why it was not equally prudent to rely on this barrier, as to erect another, when it was known, that the company could place and replace it at their option.

The suit should have been commenced against the company. Their charter provides, that they shall so construct their road, as not to obstruct the safe and convenient use of the highway. Neglect of this duty would give a right of action to the party injured, against the company. Why should the town be held liable? The charter shifts the obligation to repair to the company; and it is not merely useless circuity of action, to sustain this recovery, and to require the town to seek redress of the company; there is great reason to doubt the right of the town, after a verdict against them, to recover of the company. The town is not liable for the fault of the company, as a master for his servant; and the law does not recognize a several liability in two principals, who are unconnected. *Quarnum v. Burnett et al.*, 6 M. & W. 497. *Rapson* v. *Cubitt*, 9 Ib. 710. *Stone* v. *Cartwright*, 6 T. R. 411. *Laugher* v. *Pointer*, 5 B. & C. 315. *Nicholson* v. *Mounsey*, 15 East 384. *Brown* v. *Lent*, 20 Vt. 529. *Lane* v. *Cotton*, 12 Mod. 472.

But a recovery here will shield the company,—the party really in fault. The town cannot recover of them. After a judgment against the town, the parties are *in pari delicto. Holman* v. *Johnson*, Cowp. 343. *Marck* v. *Abel*, 3 B. & P. 38. *Griswold* v. *Waddington*, 16 Johns. 487. *Harlow* v. *Humiston*, 6 Cow. 189. *Peck* v. *Ellis*, 2 Johns. Ch. R. 137. *Drew* v. *New River Co.*, 6 C. & P. 754. *Smith* v. *Smith*, 2 Pick. 621. *Butterfield* v. *Forrester*, 11 East 60.

*Tracy, Converse & Barrett* for plaintiff.

The rail road company had the right to make the excavation; but did that excuse the town from all care in relation to the highway? The town are liable for all damages happening upon roads, which

they are " bound to keep in repair." Rev. St. 139, § 26. They are bound to keep in repair all public highways within the town. The right of the company to make their road across the road in question did not take away its character as a highway. It only gave a right to use it for a particular purpose, for a short time, thereby temporarily interrupting the ordinary use of it. The company are amenable to the town. The selectmen have the subject under their control ; individuals have no such control. To hold that towns are under no obligation to the traveller, in cases like the present, would be to r emove the principal if not the only guaranty of safety to his person and property. The case of *Currier* v. *Lowell*, 16 Pick. 170, is directly in point. Rev. St. of Mass. 246, § 22. 6 Pick. 59. 13 Ib. 94. Sec. 11 of the charter of the Boston & Lowell Rail Road Company is identical with sec. 14 of the charter of the Conn. & Pass. Rivers Rail Road Co. The decision in *Currier* v. *Lowell* was recognized as sound law in *Lowell* v. *Boston & Lowell R. R. Co.*, 23 Pick. 24, where the town of Lowell was allowed to recover from the rail road company the single damages recovered in *Currier* v. *Lowell*.

The opinion of the court was delivered by

KELLOGG, J. Upon the trial in the court below, the court refused to instruct the jury in the manner requested by the defendant, and by reason of such refusal the case is brought here for the consideration of this court. These requests lead to an inquiry as to the duty and liability of the town to take and continue the necessary measures to guard and protect the public against injury upon the road in question, while the rail road was being constructed at that place, and until the highway was restored to its former condition. That the road was a public highway is not controverted ; and consequently the town was bound by law to maintain it. It has, indeed, been said, that the grant to the rail road company, authorizing them to lay their track across the highway and to make all necessary excavations, was a virtual discontinuance of the highway at this place, and consequently that the town was relieved, as to that part of the road, of all responsibility. No authorities are produced, and it is believed that none are to be found, to sustain this position. It is quite evident, that a discontinuance of the road was not necessary

to the enjoyment of the rights secured to the rail road company, and that such discontinuance was never contemplated by the company, or the town. For the rail road company only found it necessary to cross the highway at this point; and although this might interrupt public travel, while the rail road track was being constructed, yet it would not amount to a discontinuance of the road. Such interruption, however, was but a *temporary suspension of the use* of the highway, and not a discontinuance of the road. It might as well be urged, that every highway, which is temporarily obstructed, so as to be impassable, or unsafe, is thereby discontinued. Inasmuch, then, as the road remained a public highway, the duty and obligation of the town continued,—not, however, to keep the road at this place passable at all times, for this might be impracticable, while the rail road was being constructed; but we think the town was bound, during the interruption of the travel by the construction of the rail road, to see, that a suitable by-way was provided by the public, and to take all proper and reasonable precautions to guard them against passing upon the highway, while it remained unsafe by reason of the operations of the rail road company in the construction of their road.

Equally untenable is the ground assumed by the defendants, that the obligations imposed upon the rail road company, by the charter, in the construction of their road across public highways, absolve the town from its duties and liabilities to the public. That duty still remains obligatory upon the town, so long as the road continues a public highway. This view is fully sustained by the case of *Currier* v. *Lowell*, 16 Pick. 170, which is almost identical with the case at bar; and with the law of that case we are entirely satisfied.

It has been urged, that if the town is held liable to the plaintiff, it will do great injustice, inasmuch as it may deprive the defendants of all remedy against the rail road company. If this were true, it would be no sufficient reason for denying to. the plaintiff a right, clearly secured to him by law. If the law give the plaintiff a remedy for the injury he has sustained, against either the rail road company, or the town, at his election, the court have no power to deny him that right. If, however, the plaintiff's remedy against the town were doubtful, and the remedy against the rail road company

Willard *v.* Newbury.

unquestionable, the court might, perhaps, be justified in remitting the party to the latter remedy. But we entertain no such doubt.

And we are inclined to think, the supposition, that, if the plaintiff recover of the town, the town will thereby be deprived of a remedy against the rail road company, is not well founded in law. In *Lowell* v. *Boston & Lowell R. R. Co.*, which was a suit founded upon the provisions of a charter similar to the charter of the Pass. & Conn. Rivers Rail Road Co., and in a case very similar to the present, the town were held entitled to recover the amount, which they had been compelled to pay for an injury occasioned by the rail road company, by obstructing the highway in the construction of their rail road. 23 Pick. 24. This decision seems to us to be founded in reason, and is directly in point.

But it has been urged in argument, that, upon the facts reported, the plaintiff is not entitled to recover. This depends upon whether the evidence discloses a want of ordinary care and diligence on the part of the town, to guard and protect the public against injury, resulting from the state and condition of the road. This was a question of fact, for the consideration of the jury, and which the jury have found in favor of the plaintiff. And this question, we think, was properly submitted to the jury, and under suitable instructions from the court below. Consequently their finding upon this question must be conclusive upon the parties. For it is obvious, the evidence *tended* to show, that the town were not using that reasonable care, which was necessary to warn the traveller of the unsafe condition of the road, and which, had they done, the injury now complained of would not have occurred. If the jury believed this evidence, (and doubtless they did,) it justifies their verdict.

We discover no error in the judgment of the county court, and the same is therefore affirmed.