Willey *v.* Portsmouth.

## Willey *v.* Portsmouth.

It is no objection to an interrogatory to a witness, that it assumes facts which are not disputed; nor that it puts a hypothetical case to an expert, if the supposed case is that which is put in evidence.

An interrogatory, not objected to when a deposition is taken in presence of the adverse counsel, can not be objected to at the trial.

It will not be assumed that a witness does not know the place of an accident, because he says he was not present.

Copies of town records are admissible in evidence; and if words are worn out, or illegible in the original, blanks should be left, and the reason added in a note.

Votes in ancient records of a town are presumed to have been regularly passed, though no record of a warrant or notice is found.

Titles of most lands in the first towns in New-Hampshire were derived from the towns.

Reputation is competent evidence of the laying out of ancient highways. Such are recitals in ancient records and grants.

A former failure of a culvert may be evidence of defective construction, and of the knowledge of the fact by the town authorities.

Ancient user is evidence of a public highway, and of its limits; and ancient repairs, of the obligation of the town to repair.

Towns are not generally bound to make the whole that is laid out as a highway passable, but if an obstruction out of the traveled part renders the road unsafe, the town will be liable unless they make proper safeguards or railings.

Towns are liable for defects in their roads, or obstructions so near as to be dangerous, when erected or made by others, and must seek their remedy against those who caused the defect or obstruction, except where a railroad has necessarily created a danger which the town can not obviate.

The want of a safeguard against a danger near a highway, may be alleged as a defect in the road.

CASE, for an injury alleged to have been received in consequence of a defect in a highway in Portsmouth.

It appeared that the street called Islington Street, crossed a brook called Islington Creek, nearly at right angles. It was generally about three rods wide between the fences, but where it crossed the creek, the stone wall on the west side was set further back, leaving the space between the fences about six rods wide. The fences have remained in the same position since the memory of the oldest inhabitant, until recently. There was no evidence of the laying out of this street.

The main traveled track was over a bridge near the easterly fence, and the defendant contended there was a highway here by dedication and use, but it extended no farther west than the traveled track and bridge. But the plaintiff contended that the whole six rods was a highway by dedication and use, and introduced evidence tending to show that there was a path made passable, west of the bridge, by which people were accustomed to drive through the brook to water their teams, and that in winter, when the snow was blown off the bridge, the principal traveled path crossed the brook there. He also proved that Portsmouth had formerly widened the bridge to the west several feet, and in one instance the surveyor took materials for the repair of the highway from the space between the west end of the bridge and the wall. The defendant introduced evidence to rebut and contradict this testimony.

It appeared that the Portsmouth and Concord Railroad had within a few years laid their track across the space between the bridge and stone wall, and had constructed a culvert for the

brook from the west end of the bridge towards the wall, and had made an embankment across this culvert, had raised the bridge a few feet, and had filled the space between their track and the bridge to the level of the traveled part across the bridge. The hole into which the plaintiff fell, at the time of the alleged injury, was between the railroad track and the bridge, directly over the culvert built by the railroad company, and over the path alleged to be cleared out for a watering place. The hole was occasioned by the breaking of a covering stone, or some defect of the culvert. There was some evidence tending to show that the place of the accident might be within the limits of the land taken for the railroad, though no evidence was offered that the railroad had any right to take land, or, if any, how much, or that they had taken any, nor what rights they would have by such taking.

The defendant requested the court to instruct the jury, that the evidence offered by the plaintiff, if uncontradicted, was not sufficient to prove the existence of a highway at the place where the accident happened, by dedication and use, and that the defendants are not responsible for the acts of the railroad, done within the limits of the railroad and out of the traveled part of the highway.

The court declined so to charge, but instructed the jury that by our statute no highway that has not been laid out agreeably to statute law, shall be deemed a public highway, unless the same has been used by the public for a term of time not less than twenty years, and that no highway thrown open to the public, the use of which would not be necessary for public travel, (excepting for the purpose of travel over a toll-bridge,) shall ever be deemed a public highway, unless the same shall be laid out agreeably to statute law ; and that the jury might, upon that principle, inquire and determine upon all the evidence before them of dedication and public use ; where the westerly line of said public highway was ; whether at the west end of the bridge and on the west line of the main traveled track, as the defendants claimed, or the stone wall, as claimed by the plaintiff, or

some intermediate line between the two; and if they should find that the place of the accident was within the limits of the public highway, and the plaintiff received an injury there, in consequence of a defect of said highway, without any fault on his own part, the town would be liable; otherwise not, except in one case. If there was a dangerous place, not within the limits of the highway, but near the same, into which persons traveling in the highway would be liable to fall and receive injury, and the town had notice or knowledge of it, it would be their duty to put up a railing, or fence, or something to prevent travelers from approaching the place, or at least to give them notice of danger, so that they might avoid it; and if they found that this hole was such a dangerous place, so situated, and the defendant had knowledge or notice of the fact, and had neglected to put any fence or railing there, or do any thing to prevent accident or injury to travelers, and the plaintiff, in consequence of such neglect, and without fault on his part, received an injury there, the town would be liable, though the place was out of the limits of the highway. The court also instructed the jury that the plaintiff could recover damages for such an injury, in this suit, notwithstanding the declaration in the writ was in common form, and set forth the defect as being in the highway; and, also, if they found the place of the accident to be within the limits of the public highway, and the plaintiff received injury in consequence of a defect therein, without fault on his part, the defendant would be liable in this case, even though the place of the accident was also within the limits of land taken by said railroad, and though the culvert was built by the railroad for their own use and benefit.

The jury returned a verdict for the plaintiff, which the defendant moves may be set aside for supposed error in said instructions, and in the refusal to charge as requested, and in certain rulings as to the evidence, which are sufficiently stated in the opinion of the court.

*Hatch,* for the defendants, cited 1 Greenl. Ev., sec. 434; 1

Stark. Ev. 188 ; *Collier* v. *Dorchester,* 6 Cushing 396 ; *State* v. *Nudd,* 3 Foster 327 ; *Howard* v. *North Bridgewater,* 16 Pick. 189 ; *Hull* v. *Richmond,* 2 W. & M. 337 ; *Farnum* v. *Concord,* 2 N. H: 392 ; *Smith* v. *Wendell,* 7 Cush. 498 ; *Shepardson* v. *Colerain,* 13 Met. 55 ; *Palmer* v. *Andover,* 2 Cush. 600 ; *Jones* v. *Waltham,* 4 Cush. 499.

*S. H. Goodall,* for the plaintiff, cited *Hobbs* v. *Lowell,* 19 Pick. 405 ; *Currier* v. *Lowell,* 14 Pick. 170 ; that the town is liable for acts of the railroad. *Hobbs* v. *Lowell,* 19 Pick, 405 ; *Cogswell* v. *Lexington,* 4 Cush. 307 ; *Sprague* v. *Waite,* 17 Pick. 309 ; *Cobb* v. *Standish,* 2 Shep. 198 ; *Batty* v. *Duxbury,* 24 Vt. 155 ; *Palmer* v. *Andover,* 2 Cush. 601 ; 2 Greenl. Ev., sec. 662 ; *Reed* v. *Northfield,* 13 Pick. 94 ; *Bliss* v. *Deerfield,* 13 Pick. 102 ; *Hannum* v. *Belchertown,* 19 Pick. 311 ; *Wright* v. *Trickey,* 3 Cush. 290 ; *Hopkins* v. *Crombie,* 4 N. H. 523 ; *Snow* v. *Adams,* 1 Cush. 443 ; *Lawrence* v. *Mont-Vernon,* 35 Me. 100 ; *Goodrich* v. *Colchester,* 19 L. R. 468.

BELL, J. Several questions relative to evidence may be first disposed of.

A witness was asked, " Did you see Willey on the day of the accident ? " It is said the question assumes there was an accident ; but we cannot infer from the case that there was any controversy as to the fact that an accident had occurred. The whole assumes that there was conclusive proof of it ; the contest being whether the accident happened at such a place, and under such circumstances that the defendants were responsible. The question assumes no hypothetical case, no controverted fact, but alludes to a fact not in question, as it necessarily must if any inquiry must be made about it. At the time the deposition of this witness was taken the defendant's counsel was present, and made no objection. It is now too late to object.

Another witness was asked, " What were the limits of the road on the West side, as to fences ? " It is objected that this question assumes that there was a road, and that it had fences on its

sides, which were its limits. But it was not controverted that there was a road, nor that there were fences which were the limits of the uninclosed land along the road, which is in common speech the road. The question merely referred to undisputed matters of fact, upon which the rights of the public might depend.

"Are you acquainted with the highway where the accident happened?" was the question to another witness. This, it is objected, assumed there was an accident, and a highway where it happened. Neither of these facts was in dispute, unless *where* is taken to imply that the accident happened *in* the highway; but *where* does not necessarily mean *wherein*. It may as well mean *whereabout*, that is, *near which*. If the defendant thought the ambiguous phrase might mislead the jury, they could make it clear by a question.

"If you were going up by Woodbury's from the place where Willey left you, what would have been your direct way; where Willey went, or elsewhere?" is objected to as supposing a hypothetical case. In terms it does so; but it is merely a clumsy mode of asking, "What is the direct way by Woodbury's," &c.

A physician who attended the plaintiff was asked, "What would be the natural result of a sprain of the back, and a bruise of the side, as to duration, soreness," &c. It is evident from the case that this question, though hypothetical in terms, in fact related to the injury for which the action was brought. The opinions of this witness were admissible as those of an expert.

A witness testified that he "was acquainted with the highway where the accident happened, for thirty years. It was open as a highway as long as he can remember. He saw the place the next Sunday after Mr. Willey fell; it was within the limits of the highway as fenced out. He was not present when Willey sustained any accident." The answers were objected to as hearsay, and not founded on the witness' own knowledge. If the defendant doubted the witness' knowledge of the place of the accident, it was his duty to make that clear by proper inquiries. The court cannot assume he did not know the facts he states, because he was not present at the time of the accident. He

might know the place otherwise than by being present. The parties might have formally admitted it in his presence, or they might have assumed it in taking the testimony as a place well known, and not in dispute. Information acquired in this and in other ways would be sufficient to justify the witness' answer. Indeed the whole case shows that no question was made as to the place.

It was contended that certain copies from the records of Portsmouth were improperly admitted. 1. Because the originals should have been produced; but "the contents of any record of any judicial court, and of entries in any other public books or registers, may be proved by an examined copy. This [rule] extends to all records and entries of a public nature, in books required by law to be kept." 1 Greenl. Ev., sec. 91; 2 Phill. Ev. 163; 2 Cowen & Hill's Notes 343.

2. One copy contained blank spaces in the lines, which were designated by an asterisk, referring to a note at the bottom: "words defaced or worn out." It was objected that the copy was defective, and that it was improperly explained by the clerk. It was the duty of the clerk to certify the record as it was. He could not fill up the blanks by conjecture; neither could he properly leave merely blanks where words were worn out or obliterated, because that would be calculated to give the impression that the record was originally defective, contrary to the fact. And there seems, therefore, no course to be taken, but to note on the paper that a missing word was worn out, or the like. We therefore think this objection not well founded.

3. It is objected that they did not relate to the case. If there was a doubt as to their applying to the place in dispute, that was a matter for the jury. It was not evident they did not relate to the case.

4. It is said they were not votes of a legal meeting, because it did not appear that a town meeting was legally called. But every presumption is to be made in favor of the regularity of the proceedings of towns at that early date. The records of that day usually contained only the votes passed, and it is not to be pre-

sumed that the meeting is not both legal and regular, because there is now no record showing that it was so.

5. It is said the votes exceeded the powers of a town, whether regarded as grants of land or layings out of highways. This is the record of a meeting held only one year after Portsmouth was incorporated under the Massachusetts government, and more than two hundred years ago. It is matter of history that the towns of this province at that time claimed the fee of the lands within their limits, which were not granted to individuals. Some portions of the lands in Portsmouth were held under grants by Mason and his agents, but the titles generally were not under Mason, but under grants of the town. It was nearly a century after this that the distinction began to be made between the town and the proprietary. The town exercised the rights of owner, and whether well or ill-founded, it was acquiesced in and not disputed. It was competent for them to grant their possessory right by vote, subject to a condition to leave six rods in breadth for a highway, if they thought fit, and such a vote might well account for the unusual breadth of the road at this place.

This matter of the highway was a matter of general and public interest, in relation to which evidence of reputation was competent. 1 Greenl. Ev., sec. 128; 1 Phill. Ev. 238. Recitals in any ancient writings, as well as the declarations of parties now deceased, would be evidence, and for this purpose it would not be material that the document which contained the recital, if genuine, was legal or well executed.

A record of the laying out of a highway, terminating at the fence on the side of the highway in question, was offered and admitted as evidence tending to show that all the land between the fences was highway. It was admissible on the ground of reputation. It was an implied declaration that the highway extended to the fence.

A witness, for the purpose of showing the culvert defectively constructed, and that the town had notice of the deficiency, testified that the culvert had previously given way. The case of *Collins* v. *Dorchester*, 6 Cush. 396, is cited in support of the ob-

jection to this evidence; but we think the cases are not parallel. The evidence in that case tended to show that a similar accident had happened to the witness without his fault. Here the evidence tended to show the defective construction of the bridge, and that the town authorities were aware of the fact. The evidence was not offered to show the defect complained of, which does not seem to have been disputed, but to show the knowledge of the authorities of the bad construction of the bridge, and nothing in the decision referred to is in conflict with that.

It is said that the whole evidence offered, as tending to show a highway, was insufficient, and the charge of the court was wrong; and this is the great point of the case. We take it to be clear that evidence of reputation, and evidence of long continued user, are competent and sufficient to show a highway by prescription. This general principle is distinctly stated in *Baker* v. *Clark*, 4 N. H. 383, and in *State* v. *Nudd*, 3 Foster, 327; and none of the cases to which we are referred cast any doubt upon the principle. It is most frequently discussed as a title by dedication of the owner of the land. But whatever may be the term used, the principle in cases of long continued user is neither more nor less than that habitually applied in the case of private rights, that an adverse, exclusive and uninterrupted enjoyment for twenty years, as a general rule, affords a conclusive presumption of a grant or a right, as the case may be, which is to be applied as a *presumptio juris et de jure*, wherever by possibility a right can be acquired in any manner known to the laws. *Wallace* v. *Fletcher*, 10 Foster 434; *Reg.* v. *Patric*, 30 L. & E. 207; see *French* v. *Martin*, 25 N. H. (4 Foster) 449; *Reed* v. *Northfield*, 13 Pick. 94. As against the land-owner, long continued user by the public, as a public highway, is evidence of a right so to use it, and of a grant of a right, a dedication, or of a laying out by public authority, the record of which is now lost, or localities are so changed that it can not now be shown to apply to the place in question. The same kind of evidence is equally applicable to charge the town with the burden of maintaining the way, but as the public may enjoy such an easement over a way,

which others are bound to repair, it may be easy to go further and to show such acts as tend to fix by prescription the burden of maintaining the way on the town. This is the point of the two decisions first referred to. It must appear not only that the road has been used as a place of passing by the public, but that it has been opened, or made, or repaired by the public authorities. *Hull* v. *Richmond*, 2 W. & M. 337 ; *State* v. *Carpenter*, 2 N. H. 513 ; 2 Greenl. Ev. 552. But this point is not material in this case, because the evidence is clear that there was a public highway at or very near the point in question, used and repaired by the town beyond the memory of the oldest witness. The question related to the place where the accident complained of occurred. It was within the fences on the two sides of the road, and about twenty-five or thirty feet from the road way, or track across the old bridge. The real question was, whether the spot in question was in the highway. As to this the evidence was circumstantial ; but so far as it is stated it was competent ; and it was for the jury to judge of its sufficiency. The same kind of evidence which is competent to prove the road itself, must be sufficient to prove its extent. The public right is not confined to the wrought portion of the highway, since towns are not bound to make all parts of their highways as laid out suitable for the public travel. It is enough if they keep in repair such part of the way as is required by the public travel passing upon them. The travel west of the bridge in summer and winter, the widening of the bridge, taking materials for the traveled path, the laying a new road to the fence, the long continuance of the fences in their present position, and the reservation of six rods there by the town, were all circumstances tending to show that the public rights there extended from fence to fence. *Sprague* v. *Waite*, 17 Pick. 317.

But as towns are not bound to make all parts of the highway passable ; *Howard* v. *North Bridgewater*, 16 Pick. 190 ; *Shepardson* v. *Colerain*, 13 Met. 55 ; *Smith* v. *Wendell*, 7 Cush. 498 ; *Farnum* v. *Concord*, 2 N. H. 394 ; it is not enough to entitle a party to recover, to show that he has sustained an

Willey *v.* Portsmouth.

injury from a defect or obstruction in a part of the land laid out, or presumed to be laid out for a public highway ; he must show that it occurred in that part of the way which has been prepared for the public travel, or that the obstructions out of the traveled path were such as to endanger the safety of travelers. *Snow* v. *Adams,* 1 Cush. 443.

As we understand the case, the evidence tended to show the last to be the fact. The bridge, built and maintained by the town, had been extended and widened so as to reach beyond the place of the accident, by the railroad company, who built the additional culvert, and raised the old bridge so as to make all parts of the way from the old path to the railroad track apparently equally suitable for the public travel. This had been done years before, within the knowledge of the public authorities, and the town can not exonerate themselves by showing that this part of the road was built by others and not by the town. If the part thus built was such as to endanger the traveler, the town is answerable. This principle is settled by the case of *Elliot* v. *Concord,* 7 Foster 204, where it was held that if a railroad company, acting under their charter, create an obstruction by which a traveler sustains damage, the town is answerable as if the same acts had been done by an individual, and the town must seek their indemnity against the railroad. *Currier* v. *Lowell,* 16 Pick. 170 ; *Lowell* v. *B. & L. R. R.* 24 ; *Willard* v. *Newbury,* 22 Vt. 458 ; *Batty* v. *Duxbury,* 24 Vt. 155.

If the town had widened the traveled path so as to hold out to the traveler that all parts were equally suitable for public travel, they would be answerable for damages growing out of defects in any part of it. *Goodrich* v. *Colchester,* 18 L. R. 468 ; *Cobb* v. *Standish,* 14 Me. 200.

The case cannot be different, if they suffer the same thing to be done by others. If they did not design to be held responsible for the part of the bridge thus constructed by the railroad, they were bound to place some monument or railing, indicating the limit of the way for public travel. The charge of the court in

this particular was in accordance with the decision in *Elliot* v. *Concord.*

The duties of the town were not changed by the fact that the railroad crossed it at the place in question.   They are, in the first instance, responsible to the sufferer who sustains damage by the defect in the road, though caused by the construction of the railroad; *Bacon* v. *Boston*, 3 Cush. 179; except where the defect in the highway is the necessary result of the building of the railroad, and which, therefore, the town could not rightfully alter, and which the town could not obviate.   In that case neither the town nor the railroad would be responsible, and the party is without remedy.   *Jones* v. *Waltham*, 4 Cush. 299.

The case of *Cogswell* v. *Lexington*, 4 Cush. 307, is to the point that a party may recover damage suffered by a danger outside the road, if not properly guarded against.   The general rule, says *Dewey*, J., is, that if there are dangerous pits, excavations or precipices, without the limits of the located highway, but so near it that they would, without railings or guards, endanger the safety of passengers using the traveled part of the road, with ordinary care and diligence to avoid exposure, it was the duty of the town to guard such pits, &c., by railings; and if neglected, the town would be liable for the injury thereby occasioned.   *Jones* v. *Walker* supports the same doctrine.

The case of *Cogswell* v. *Lexington* is an authority to the point, that the want of a proper safeguard may be alleged as a defect *in the road.*

Upon these views there must be

*Judgment on the verdict.*