(Decided 27th June, 1878.)

---

JOSIAH EYLER *vs.* THE COUNTY COMMISSIONERS OF ALLEGANY COUNTY.

*Canal Company cutting its Canal across a Public highway—*
*Obligation of the Canal Company in respect to such High-*
*way—New road across another already in existence—Struc-*
*tures necessary for Crossing old road—At whose expense*
*such Structures to be erected and maintained—Duty of*
*Canal Company to keep in repair a Bridge erected by the*
*Company to Unite a public highway severed by the Construc-*
*tion of the Canal—Duty of County Commissioners to keep*
*such bridge, being a County bridge, in repair, upon failure*
*of the Canal Company to do so—Primary obligation of the*
*County Commissioners to the Public—Liability of the County*
*Commissioners in Damages for Injuries sustained by reason*

Eyler *vs.* County Comm'rs of Allegany County.

*. of the Bridge being out of repair, by a Person crossing it— Liability of the Canal Company for the same—Right of Action against the Canal Company by the County Commissioners for whatever damages might be recovered of them— Right of the County Commissioners to recover of the Canal Company money expended by them in necessary repairs of the Bridge—Measure of damages.*

The appellant sued the appellees to recover damages for injuries sustained by reason of the defective condition of a bridge across the Chesapeake and Ohio Canal, over which he was riding on horseback. It was admitted that the road on which this bridge was situated was a public county road in Allegany County, and was such before the canal was constructed. The Canal Company in constructing their canal cut through and severed this road about the year 1846, and afterwards erected a bridge over the canal at the place of severance. This bridge was burned down some time during the late civil war, and the bridge standing at the time of the accident was shortly afterwards built by the Canal Company in the place of the one destroyed. The defendants insisted that they were not responsible in this action, because the Canal Company was by law bound to erect, maintain and keep the bridge in repair. HELD:

1st. That the Canal Company was authorized to cross and sever all existing public highways throughout the route prescribed by its charter; but in thus cutting its canal across public highways, the Company had no power utterly to destroy them, but was bound to unite, for the public accommodation, any highway so divided, by a reasonably convenient thoroughfare over or under its canal.

2nd. That where a new way or road is made across another already in existence and use, the crossing must not only be made with as little injury as possible to the old road, but *whatever structures* are necessary for such crossing must be *erected and maintained* at the expense of the party under whose authority and direction they are made.

3rd. That the duty of maintaining and keeping the bridge in repair, devolved upon the Canal Company.

4th. That the bridge on which the accident happened was a *county bridge*, under the charge and control of the County Commissioners, and one which in discharge of their duty to the public they were bound to keep in repair if the Canal Company neglected its duty in that respect.

5th. That the obligation of the County Commissioners to the public is primary and unqualified, and the fact that the Canal Company was bound to repair, did not absolve the County Commissioners from their primary duty to the public, nor was their liability affected by the fact that this action could have been brought against the Canal Company.

6th. That while the County Commissioners were liable to the appellant in this action, the Canal Company was not discharged from its obligation to maintain and repair this bridge; nor were the Commissioners left without remedy against the Company, but had their remedy against it for whatever damages might be recovered against them in this action; and if they expended money in necessary repairs, they could recover it back from the Company in an action on the case.

In an action to recover damages for injuries sustained by reason of the defective condition of a bridge over which the plaintiff was riding on horseback, the jury, should they find a verdict for the plaintiff, in estimating damages, should consider the health and condition of the plaintiff before the injury complained of, as compared with his present condition, in consequence of said injury, and whether said injury was in its nature permanent, and also the physical and mental suffering to which he was subjected by reason of said injury, and should allow such damages as in their opinion would be a fair and just compensation for the injury which the plaintiff had sustained, and they should also consider the condition of the plaintiff's horse before the injury complained of, as compared with his subsequent condition in consequence of such injury, and allow the plaintiff such damages as in their opinion the horse had sustained.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the defendant offered evidence tending to prove that at the time of the construction of the canal, and after it cut the highway in question, the Canal Company caused a bridge to be erected by its contractors in the year 1852, at this point, which was burned down sometime during the war, and the bridge now standing—the bridge in question—was erected by the Canal Company in the place of the one destroyed, shortly afterward; that the defendant never repaired or took

charge of said bridge, and never exercised ownership or control over the same; to the introduction of this evidence the plaintiff objected as inadmissible under the pleadings in this case, for the purpose of affecting the liability of the defendant, but did not object to the same for any other purpose; but the Court overruled the objection, and allowed said evidence to go to the jury generally; to which ruling of the Court the plaintiff excepted.

*Second Exception.*—The plaintiff offered eight prayers, of which only the following were considered by this Court:

4. If the jury find from the evidence in the case, that the Chesapeake and Ohio Canal Company cut a canal through the public road in Allegany County, described in plaintiff's declaration, (if the jury find such road was a public road) and built the bridge in question over said canal, and thereby connected the two parts of said road so severed by said Canal Company, then the jury are instructed that said bridge as soon as erected was dedicated to the use of the public on said highway, and became subject to the control of the County Commissioners of Allegany County; and that if the jury further find, that the plaintiff whilst riding on said bridge, and using due care, was injured by reason of the defective condition of said bridge, resulting from the negligence of the defendant in not keeping the same in repair, then the defendant is liable to the plaintiff in this action.

8. If the jury find a verdict for the plaintiff, in estimating damages they are to consider the health and condition of the plaintiff before the injury complained of, as compared with his present condition, in consequence of said injury, and whether said injury is in its nature permanent, and also the physical and mental suffering to which he was subjected by reason of said injury, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which the plaintiff has thus sustained, and the jury are also to consider the condition

of the plaintiff's horse before the injury complained of, as compared with the condition of said horse since, and in consequence of such injury, and to allow the plaintiff such damages as in the opinion of the jury said horse may have sustained.

And the defendant offered three prayers, of which only the following was considered by this Court:

1. If the jury find from the evidence in the cause that the Chesapeake and Ohio Canal Company, at or about the time of the completion of its canal, in the year 1851, severed and destroyed the public road leading from Cumberland to the ford in the Potomac river, near Patterson's creek, by cutting said canal through or across said road, then said Canal Company was bound to reconstruct and keep open said highway for the benefit of the public ; and if the jury shall further find, that the said Canal Company, in obedience to its said obligation, did construct a bridge at said point at or about the time of the completion of said canal, in 1852, and has ever since maintained and kept up said bridge at its own proper charge and expense, through the supervision of its own officers or superintendents ; and if the jury shall further believe, that the defendant never, at any time since said bridge became a necessity, has had charge or supervision of the same, or has been called upon to make or has made any levy or appropriation for its repair, then the plaintiff is not entitled to recover against the defendant, even though the jury shall further find that the injury complained of was the result of the defective condition of said bridge so constructed and kept in repair by the said Canal Company.

The Court rejected the plaintiff's prayers, and the second and third prayers of the defendant, but granted its first prayer. To the rejection of his prayers, and to the granting of the defendant's first prayer, the plaintiff excepted, and the verdict and judgment being against him, he took this appeal.

Eyler *vs.* County Comm'rs of Allegany County.

This action was originally brought in the Circuit Court for Allegany County, but was afterwards removed to Washington County, at the suggestion of the appellant.

The cause was argued before Bartol, C. J., Stewart, Brent, Miller and Robinson, J., for the appellee and leave was given to the appellant to file notes.

*William Brace* and *Benj. A. Richmond,* for the appellant.

The liability of County Commissioners for accidents happening by reason of the defective condition of county roads and bridges, is well settled in this State. *Comm'rs of A. A. Co. vs. Duckett,* 20 *Md.,* 468; *Comm'rs of Calvert Co. vs. Gibson,* 36 *Md.,* 229; *Comm'rs of Balto. Co. vs. Baker,* 44 *Md.,* 1.

Is there anything in the facts of this case to destroy this liability? It is said that because the portion of the highway on which the accident occurred, is a bridge crossing the canal, the Commissioners are relieved from responsibility, and that it rests alone on the Chesapeake and Ohio Canal Company. The appellant contends that, admitting the liability of the company, there is a concurrent liability on the appellee.

The road in question was in existence before the building of the canal, and in 1852, the road was severed and the bridge built by the Canal Company. By the Act of 1853, chap. 239, all county roads and bridges were placed under the control of the County Commissioners. This bridge was then in existence, and even though it had been built by the Canal Company, it was built for the *benefit of the public* and *not for its own use—was part of a public highway and must have been subject to the operation of the Act of* 1853. If it was a county bridge, then it became the duty of the Commissioners to see that it was kept in proper repair, and they are responsible for its defective condition.

If it was not a county bridge, then it is difficult to conceive what elements are necessary to make it such.

The appellee assumes that the legislation in regard to the canal took away from the Commissioners their authority over this bridge—the fallacy of which argument is, that all legislation imposing upon the Commissioners the duty of taking charge of roads and bridges, is of subsequent date to the charter of the canal and to the building of the bridge, and to the decision in *Leopard's Case* in 1 *Gill.*

Even admitting that prior to the Act of 1853, the Canal Company alone had charge and control of the bridge, still it was competent for the Legislature to take away such control and vest it in the Commissioners. This was not taking private property, because the bridge was clearly public property, built by the Canal Company for the benefit of the public and in discharge of a duty toward the public. The Legislature must have intended by the Act of 1853, to place in the control of the Commissioners all roads and bridges which were public highways. This bridge constitutes no *part of the canal,* is not in any manner advantageous or beneficial to the canal, but was built and maintained solely for the purpose of restoring a public road severed by the canal, and *being no part of the highway of the canal, must be part of the public highway.*

Admitting further that there was a duty resting on the Canal Company to maintain and repair the bridge, was it not also the duty of the Commissioners to enforce and require the Canal Company to perform such duty?

If the bridge in question is included in the language of the Act of 1853, then it is immaterial whether the Commissioners ever, in fact, assumed charge of the bridge or not. The duty to do so was imperative and not discretionary. *Comm'rs A. A. Co. vs. Duckett,* 20 *Md.,* 468, 477.

The liability of County Commissioners is placed upon the same grounds as that of municipal corporations. *Comm'rs A. A. Co. vs. Duckett,* 20 *Md.,* 468, 477. These

corporations are liable where the highway is injured or obstructed by natural causes. *Mayor, &c. of Balto. vs. Marriott,* 9 *Md.,* 160 ; *Flynn vs. Canton Co.,* 40 *Md.,* 312. They are equally liable where the act is done by one who has lawful authority to use the highway, but does so in a negligent manner. *Mayor, &c. of Balto. vs. Pendleton,* 15 *Md.,* 12. There may be a concurrent responsibility. *Comm'rs of Calvert Co. vs. Gibson,* 36 *Md.,* 229. The *primary* liability to the person injured is upon the county, town or municipal corporation invested by statute with the control of highways. *Shearman & Redfield on Neg.,* secs. 176, 357, 377, 393, *and notes* 2 *and* 3 *on page* 176 ; *Wharton on Negligence, sec.* 969 ; *Dillon on Municipal Corporations, secs.* 795 *and* 796, *page* 927 ; *Currier vs. City of Lowell,* 16 *Pick.,* 170 ; *City of Lowell vs. R. R. Co.,* 23 *Pick.,* 24 ; 1 *Redfield on Railways, secs.* 538 *to* 542 ; *Robbins vs. City of Chicago,* 2 *Black,* 559 ; *Robbins vs. City of Chicago,* 4 *Wallace,* 657.

If the County Commissioners had *control* of this bridge, then there can be no doubt of their liability ; and if the Act of 1853 did not give them such control, then every railroad or canal crossing a public road in the State is outside of and beyond the control and supervision of the civil authorities.

*S. A. Cox,* for the appellee.

The only question to be determined under the first exception is, whether the evidence offered by the appellee was admissible under the plea of not guilty. The evidence was properly admitted. Under a plea of not guilty in an action on the case, the defendant may give in evidence a release, satisfaction, &c., or any justification or excuse, or any matter that in equity and conscience, according to the existing circumstances, precludes the plaintiff from recovering.

The plea puts in evidence *every material* fact contained in the declaration, and every defence is admissible in evi-

dence under such a plea, of which the defendant should offer testimony.    *Bird vs. Randall*, 3 *Burrows*, 1353 ; *Shafer vs. Stonebraker*, 4 *G. & J.*, 345 ; *Osgood vs. Spencer*, 2 *H. & G.*, 135 ; *Lancaster Canal Co. vs. Parnaby*, 2 *Adol. & Ellis*, 223 ; *Spencer vs. Dawson*, 4 *W. & Rob.*, 552.

The material allegation in the declaration, was the control of the bridge or road by the appellee, and its duty and obligation in the premises.    This the plea put in issue ; under it such evidence was proper as went to show the appellee never had control of the road at all, or that having had control, it was ousted of its jurisdiction at that point by matter subsequent, and that at the time of the accident there was no legal responsibility resting upon it to repair said bridge.    The evidence offered went directly to this point and was properly admitted.

In respect to the second exception.    There was no error in the ruling of the Court below upon the prayers presented.    The appellee cannot be held liable in this action at all.    The Chesapeake and Ohio Canal Company is the sole and only party responsible, under the facts in this case.

While the appellee concedes its general duty and responsibility, as an agent of the public, to keep in good repair and safe for general travel, all the public roads and bridges in the county that are under its *control*, yet in this particular case, it is specially and specifically released, and prohibited from assuming any charge, duty or responsibility in the repair or non-repair of this bridge, by the powers given to the Chesapeake and Ohio Canal Company by its original charter, and subsequent amendments thereto in this particular matter, and the duty and obligation which follows and attaches to the grant of such powers.

The liability of the appellee for any misfeasance or nonfeasance arises out of the duties imposed upon it by the statute, and the means and powers given it to carry out those duties.

If, therefore, any duty which formerly attached to it by the statute, has been given to another to perform, or the duty has been limited in extent or degree, either as to the duty itself, or the place of performance; for so much as said duty is limited or its performance released by delegation to another, no matter for what purpose, the responsibility ceases, *pro tanto,* and the appellee is not liable therefor. *Altvater vs. Mayor, &c. of Baltimore,* 31 *Md.,* 462.

Now, by the 15th section of the Act of 1824 of Maryland, chartering the Canal Company, it acquired the right to condemn *any* lands needful for the proper construction of its canal.

Whilst this section does not *in terms* give it the power to sever highways that its route might cross, yet the Act of 1826, ch. 78, fixing its objective point or termini along the course of a river and to a certain place, certainly gave it the right so to do in order to effectuate the full purposes of its existence, and the power would be held co-equal to the necessities of its construction. *Balt. & Havre de Grace Turnpike Co. vs. Union R. R. Co.,* 35 *Md.,* 224; *Canal Co. vs. B. & O. R. R. Co.,* 4 *G. & J.,* 1.

In the latter case the learned Chief Justice delivering the opinion of this Court, uses this expressive and emphatic language: "That the company acquired a vested right to acquire land by purchase or condemnation along the shores of that river, (Potomac,) to be exerted *wheresoever* and whensoever it should be thought necessary and proper for the purposes of its charter."

Now, by the Act of the State of Virginia passed February 27th, 1829, the company is given the following express powers:

"That the Chesapeake and Ohio Canal Company be and they are hereby empowered, whenever it shall be, in the judgment of the President and Directors thereof, expedient, in lieu of bridges, to substitute boats, properly fitted for the transportation of persons, wagons and carriages of

every description across the canal, wherever a public or private road shall render a bridge or ferry necessary, and such road cannot be conveniently conducted under the canal.''

This power was confirmed to the company in this State, by the Act of 1833, ch. 291, sec. 2, and became a part of its legal constitution and rights.

By the Act of 1844, ch. 279, sec. 2, the company were given the power to protect by fine, &c., against *every one* for any injury done to its works or bridges.

From these laws alone, were this question one of first impression, it is submitted the Court could reach no other conclusion, than that the power herein given to that company, to connect severed roads in the modes therein stated was absolute, without any supervision or control from the appellee or any other party, left entirely to its own discretion, as to what mode of those given it would use, and entailed upon it a primary obligation to the public, to so exercise the power in one of the several modes designated as to be safe for public travel, and so to be maintained.

And whenever and wherever the exigency might arise (within the limits of Allegany County) to call forth the exercise of the power, it operated as a repeal or release *pro tanto* of the power and duty of the appellee in the same subject-matter, and relieved it expressly of all its former responsibility therein or thereto. *Leopard vs. The Canal Company,* 1 *Gill,* 222 ; *Altvater vs. Mayor, &c. of Balto.,* 31 *Md.,* 462 ; *Manly vs. St. Helen's Canal and Railway,* 2 *Hurlst & Norm.,* 849.

It is submitted that these provisions of the law giving these enumerated powers to the Canal Company, for the erection and protection of its works and bridges, embrace not only those works and bridges needed for the proper and convenient discharge of its legitimate business, but were intended to, and do apply, as well to those which the exigencies of its construction forced it to erect, and

that this particular bridge is as much its own *private property*, to do and deal with as it pleases, subject alone to the public easement of travel over it, as are its locks, or houses for its employés. And by reason of the public easement impressed upon it in its erection, it is bound to keep up and maintain it in proper and safe condition.

MILLER, J., delivered the opinion of the Court.

The appellant brought this action against the County Commissioners of Allegany County, to recover damages for injuries sustained by reason of the defective condition of a bridge across the Chesapeake and Ohio Canal, over which he was riding on horseback. It is admitted that the road on which this bridge was situated was a public county road in Allegany County, leading from Cumberland to the ford in the Potomac river near Patterson's creek, and was such *before* the canal was constructed. The Canal Company in constructing their canal cut through and severed this road about the year 1846, and afterwards erected a bridge over the canal at the place of severance, and this was the only means of crossing the canal for a distance of eight or nine miles on either side. This bridge was burned down sometime during the late civil war, and the bridge standing at the time of the accident was shortly afterwards built by the Canal Company in the place of the one destroyed. The County Commissioners insist they are not responsible in this action because the Canal Company was by law bound to erect, maintain and keep this bridge in repair, and the learned Judges of the Circuit Court sustained this defence.

From the nature of the work itself, and the general powers given to construct the canal for several hundred miles along the left bank of the Potomac river, it is clear the Canal Company were authorized to cross and sever all existing public highways leading to the river throughout the route prescribed by its charter. But in thus cutting

its canal across public highways, the company had no power utterly to destroy them, but was bound to unite for the public accommodation, any highway so divided by a reasonably convenient thoroughfare over or under its canal. *Leopard vs. Canal Co.*, 1 *Gill*, 230. In the present instance the company did this by erecting a bridge over the canal, and thereby united the severed highway for the public use and public accommodation. Although there is no express provision in the charter, requiring the company to maintain and keep such bridges in repair, yet it is well settled, that where a new way or road is made across another already in existence and use, the crossing must not only be made with as little injury as possible to the old road, but *whatever structures* are necessary, for such crossing must be *erected* and *maintained* at the expense of the party under whose authority and direction they are made. This upon review of the authorities was recently decided by this Court in the case of the *Northern Central Railway Co. vs. Mayor, &c. of Balto.*, 46 *Md.*, 425, to be a principle or rule of the common law. It is therefore certain, that the duty of maintaining and keeping this bridge in repair is devolved upon the Canal Company. But does this fact relieve the County Commissioners from responsibility to a private individual, who, as one of the public, is entitled to travel the highway and cross the bridge, for injuries he may sustain, by reason of its being out of repair through the default or neglect of the Canal Company? That is the question which this case presents, and it leads us to inquire, first, whether the law imposes upon these Commissioners any duty or obligation towards the public with respect to this bridge.

By the Code, Art. 28, the County Commissioners of each county in the State are created a corporation with power to sue and be sued, and among other duties imposed on them it is declared "they shall have *charge of* and *control over* the county *roads* and *bridges.*" They are also re-

quired to levy all needful taxes on the assessable property of the county liable to taxation, and to pay and discharge all claims on or against the county, which have been expressly or impliedly authorized by law, and they are specially empowered to "build ,and *repair bridges,* and levy upon the property of the county therefor." These powers are conferred by statute upon these bodies corporate to be exercised for the public good, and it is well settled, that the exercise of them is not merely discretionary but imperative, and that in such laws the terms power and authority import duty and obligation. By the construction which this Court has in numerous instances placed upon these statutory provisions, which not only impose duties upon these corporate authorities, but provide them with the means and clothe them with the power to discharge such duties, their liability in an action like the present is as securely fixed, as if the statute had in express terms said, that they shall have charge of and control over all the public county roads and bridges, within the limits of their respective counties, and shall keep the same in good repair, so as to be safe and convenient for the passage of persons and property, and shall be liable in an action on the case to any person receiving injury in consequence of any obstruction or defect therein. *Mayor vs. Marriott,* 9 *Md.,* 160 ; *Mayor vs. Pendleton,* 15 *Md.,* 12 ; *County Commissioners vs. Duckett,* 20 *Md.,* 468 ; *County Commissioners vs. Gibson,* 36 *Md.,* 229 ; *Flynn vs. Canton Company,* 40 *Md.,* 313 ; *County Commissioners vs. Baker,* 44 *Md.,* 1. Such being the construction and effect of these laws, we are clearly of opinion that the bridge on which this accident happened, was a *county bridge* under the charge and control of the County Commissioners, and one which in discharge of their duty to the public they were bound to keep in repair, if the Canal Company neglected its duty in that respect. It is not a bridge erected by a corporation specially created for that purpose, with power to

charge toll for passing over it, nor by a turnpike company authorized to receive tolls for travel over its road, but it is a bridge wholly within the limits of the county, and erected on one of the ordinary public county highways. The Canal Company was required to erect it, not for its own convenience, nor to facilitate traffic on the canal, but for the "*public accommodation,*" and was bound to make it a "*reasonably convenient thoroughfare*" for public travel over an existing highway which the canal intersected. We have been referred to the Virginia Act of February 27th, 1829, by which the Canal Company was empowered, whenever its president and directors should deem it expedient, to substitute *boats* in lieu of *bridges* to accommodate travel across the canal, wherever a public road shall render a bridge or ferry necessary, and such road cannot be conveniently conducted under the canal. Assuming that this power was confirmed to the company in this State by the 2nd section of the Maryland Act of 1832, chap. 91, we do not see that it has any important bearing upon the question before us. It matters not whether a ferry-boat or a bridge should be provided in any given instance, for in either case the end to be attained was the uniting of the severed highway for the accommodation and continuance of public travel, and in this case the company did not deem it expedient to substitute a ferry-boat, but erected a bridge which as soon as erected was devoted to the use of the public, and became subject to the control of the County Commissioners. The appellees' counsel has also referred to the *proviso* in the 7th section of the Act of 1794, ch. 52, to the effect that the duty of road supervisors to mend and repair bridges, shall not extend to cases "where persons are or may hereafter be obliged, either by law or contract to keep bridges in repair." But this law has long since been superseded by other Acts of Assembly in which no such restriction is found, and this so far from sustaining the appellees' defence, plainly indicates that the

Legislature' deemed the continuance of such a restriction upon the duties and obligations of County Commissioners, unwise and inexpedient, and that the public good required they should have charge of and see to it that such bridges, as well as all others on county roads used by the public, were kept in repair. Reference has likewise been made to *Altvater's Case*, 31 *Md.*, 462, where it was held the action for the injury there sued for could not be maintained against the Mayor and. City Council of Baltimore. But the non-liability of the city in that case was placed upon the distinct ground, that by legislation subsequent to the decision in *Marriott's Case*, the police of the city had been organized as a distinct body of State officials deriving their existence from, and strictly within the jurisdiction of State authority, and not amenable to the city authorities for the faithful discharge of their duties. It was held the action would not lie, solely because the whole police force had been placed in other hands and under other control, so that the city was stripped of the power, and deprived of the means to enforce its ordinance for the removal of the nuisance by which the injury complained of was inflicted. But there has been no such change of legislation affecting the duties and obligations of County Commissioners. Their duties remain the same, and they are provided with the same ample power and means to discharge them now, as when all the cases to which we have referred were decided.

The result then is that we have a case in which the obligation to maintain and repair this bridge is, by the common law, cast upon the Canal Company, but where also the same duty and obligation are imposed by statute upon the County Commissioners. In our opinion the obligation of the latter to the public is primary and unqualified. The fact that the Canal Company is bound to repair, does not absolve the County Commissioners from their primary duty to the public, nor is their liability

affected by the fact that the appellant could, if he had chosen, have brought his action against the Canal Company. These propositions, we think, have been in effect decided by this Court in *Gibson's Case*, (36 *Md.*, 229,) already cited. After the decision in *Duckett's Case*, (20 *Md.*, 468,) the Act of 1868, ch. 299, was passed, by the 8th section of which the County Commissioners were directed to require the several road supervisors to give bond conditioned for the faithful performance of their duties, " which bond *may be* put in suit for the benefit of any person *suffering by the neglect* of the said supervisor in *keeping the roads in his district in proper order,*"and in *Gibson's Case*, it was contended that because this law gave a right of action upon the bond, the right of action against the Commissioners was thereby taken away, and the party injured was compelled to seek his remedy upon the bond of the supervisor. But the Court held that this statute merely gave a *cumulative* remedy, and left it discretionary with the party suffering injury, either to sue on the bond or to bring his action against the Commissioners.

Such are the conclusions to be drawn from our own Maryland decisions on this subject, and upon these the determination of the present case must of course depend. Decisions however to the same effect have been made in other Courts of high authority where similar questions have arisen. In the case of *State vs. Gorham*, 37 *Maine*, 451, there was an indictment against the town for neglect in keeping a bridge over a railroad in a fit state of repair. By one section of the Revised Statutes of that State, it was provided that all highways and bridges in any town, shall be opened and kept in repair, so that the same may be safe and convenient for travel, and in default thereof the town shall be liable to indictment and fine. By another section, it was provided, that every railroad corporation, shall maintain and keep in repair all bridges and their abutments, which such corporation shall construct for the purpose of en-

abling their road to pass over or under any turnpike road, canal, highway or other way. A railroad company had built its road across one of the highways in the town of Gorham, and over its road built a bridge where the high- way formerly was, with abutments, and the indictment against the town was for neglect in keeping this bridge and its abutments in repair. It was there contended, as it has been here, that the fact that the railroad company was required to maintain and keep this bridge in repair, exonerated the town from its liability and duty, but the Court in a very carefully considered opinion sustained the prosecution, and suggested some very practical and sensible reasons for their judgment. "The introduction," (say the Court,) "of railroads, and the frequency with which they cross public ways, as well under bridges, as at grade, has greatly increased the hazards of ordinary travelling. It is important that the most certain, prompt and efficient means should be provided against these new and increas- ing causes of inconvenience to travellers. Towns have the general supervision of highways. By holding them primarily responsible, a very much more convenient and certain remedy is afforded the public than could be had against private individuals or corporations. Against towns the remedy is simple, speedy and certain ; against other corporations or individuals there would be uncer- tainty as to the existence of the liability, and in many in- stances still greater uncertainty as to the pecuniary re- sponsibilities of the parties." The Court then refer to the case of *Sawyer vs. Northfield,* 7 *Cush.,* 490, where the town was exempted from liability under similar circum- stances, but clearly show that that decision turned upon the clause in the Massachusetts statute, which required the highways and bridges to be kept in repair by the towns, "*when other sufficient provision is not made there- for,*" which made the liability of towns in that State, qualified and not absolute. There was no such clause in

the Maine statute, nor is there any such provision in our statutes as construed by this Court, qualifying the duty and liability of County Commissioners, with respect to any particular county highways or bridges, or any class of them. The same doctrine in cases much stronger in favor of the towns, was adopted by the Supreme Court of Vermont, in *Willard vs. Newbury,* 22 *Verm.,* 458, and *Batty vs. Town of Duxbury,* 24 *Verm.,* 155. In the latter case the opinion was delivered by Judge REDFIELD. The accident occasioning the injury sued for, happened on a by-way made by a railroad company to connect the two points of a highway, a part of which the company had occupied in the construction of its road, and the Court say: "the consideration that this by-way was made by the railroad company, or that the railroad company were bound to have made it more safe before obstructing the former highway is nothing with which the traveller has any concern. He is not bound to inquire who makes the by-ways, or by what authority obstructions are put upon the highway. But towns, after having reasonable notice of the existence of obstructions in their highways, are bound to remove them or make safe by-ways to pass round them, or see to it that they are properly made by others, in order to exonerate themselves from liability to those who have occasion to travel. There is in law no necessary privity between the traveller and any one but the towns, as to the sufficiency of the highways." And the learned Judge also adds: "How far this rule is consistent with decided cases in other States it is needless now to inquire. We entertain no doubt upon that subject, and if we did, we should not feel at liberty to disregard the solemn determination of this Court upon the very point in so recent a case, (*Willard vs. Newbury,*) upon such mature consideration, and so elaborately discussed at the bar, and where we entertain no doubt of the satisfactory character of the general principles of reason and policy upon which it is founded."

Well may we adopt and apply these remarks to the previous decisions of this Court to which we have referred, most of which were ably argued and very carefully considered.    More recent decisions of other Courts have also affirmed the same general propositions.    We refer to *Watson vs. Tripp*, 11 *Rhode Island*, 98, to *City of Philadelphia vs. Weller*, decided by the Supreme Court of Pennsylvania, and reported in 4 *Brewster*, 24, to *City of Lowell. vs. Proprietors of Locks and Canals*, 104 *Mass.*, 23, and to *Proprietors of Locks and Canals vs. Lowell Horse Railroad Corporation*, 109 *Mass.*, 224.

But while we thus maintain the liability of the Commissioners to the appellant in this action, the Canal Company is by no means discharged from its obligation to maintain and repair this bridge; nor are the Commissioners left without remedy against the Company.    Upon the principles decided in many of the cases referred to, as also by the Supreme Court of the United States, in *City of Chicago vs. Robbins*, 2 *Black*, 418, and 4 *Wallace*, 657, they may have their remedy over against the Company for whatever damages may be recovered against them in this action.    So if they should expend money in necessary repairs, they can recover it back from the Company in an action on the case.    We need not suggest what other proceedings may be initiated by them, or by others for them, or in their interest to compel the performance of this duty by the Company, further than to say, that should it persist in neglect to repair, and subject the Commissioners to continued trouble and vexation it would do so at the risk of losing its charter.

It follows from what we have said that there was error in granting the appellees' first prayer, as well as in rejecting the fourth and eighth instructions asked by the appellant.    His fourth prayer on the question of liability accords with the views expressed in this opinion, and corresponds

with the instruction approved in *Gibson's Case,* whilst his eighth prayer correctly states the measure of damages. We deem it unnecessary to consider any of the other prayers of the appellant, as it is obvious from the case as now presented, the two we have approved will give him upon another trial all the law he requires. It also follows from the views we have expressed, that the testimony offered by the appellees in the first exception was inadmissible for the purpose of affecting their liability in this action.

*Judgment reversed, and*
*new trial awarded.*

(Decided 27th June, 1878.)