(Decided 21st July, 1881.)

THE CHESAPEAKE AND OHIO CANAL COMPANY *vs.* COUNTY COMMISSIONERS OF ALLEGANY COUNTY.

*Right of Action over against a party who was under Obligation to keep a Bridge in Repair, by a Party Primarily Liable, against whom Damages had been Recovered by a Person for Injuries sustained by him by reason of the Defective Condition of such Bridge—Defence of Pari Delicto—Costs and Counsel Fees in the Measure of Damages.*

E. recovered judgment in damages and costs against the appellee for injuries sustained by him while riding on horse-back along a public county road in Allegany County, which road ran over a bridge across the C. & O. Canal, and his injuries were incurred while crossing the bridge, by reason of its defective condition. The road had been cut in two by the appellant, in constructing its canal, and connected again by the bridge. The appellee paid the judgment, and instituted this action against the appellant to recover back the amount of the damages and costs so paid, with the interest accrued thereon and also all the costs and counsel fees incurred by the appellee in conducting the defence, on the ground that the obligation was on the appellant to keep the bridge

C. & O. C. Co. *vs.* Co. Comm'rs of Allegany Co.

in safe condition, that the appellant had notice of the suit of E., and participated with the appellee in defending it, and that the appellant was in law bound to re-imburse the appellee all its said payments and expenditures. HELD:

1st. That the appellant being bound in law to connect again by suitable means the public road severed by it in constructing its canal; and to maintain it in repair; and the appellee, for the additional security and convenience of the public, being held primarily responsible for its safe condition, but not in mitigation of the obligation of the appellant; and the defence of *pari delicto* not being applicable to this case, (the appellee under the evidence not being chargeable with more than a constructive default, and it not appearing that the defect in the bridge was known to the appellee, or that it was plainly obvious or of long standing,) and the appellant having been sufficiently notified of E's suit, the appellee had its remedy over against the appellant for the damages recovered against it by E. with interest and costs.

2nd. That the appellant was also liable for the amount of the counsel fee incurred by the appellee in defending the suit.

APPEAL from the Circuit Court of Allegany County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial, the plaintiff, to sustain the issues on its part, offered evidence, the substance of which is stated in the Court's opinion.

And proved by H. W. Hoffman, attorney at law, that he assisted the regular attorney of the Commissioners, Mr. Cox, at the last trial of said case; that the Commissioners paid him $100 for his services, which was reasonable and proper compensation.

And proved by Mr. Cox, the then attorney of the Board, that whilst said suit was pending, and after it came back from the Court of Appeals, he verbally notified Mr. Gorman, president of the Canal Company, of the same, and requested him to defend same; and that he spoke to Mr. Price, the attorney of the company, about the said suit,

APRIL TERM, 1881.                    203

C. & O. C. Co. vs. Co. Comm'rs of Allegany Co.

and Price requested him to put his statement of the pendency and nature of said suit, in writing, which he did; that Mr. Hamill and Mr. Humbird, two of the directors of the Canal Company, were present at the last trial of the case, and advised with the counsel trying the same; that said last trial took place in Oakland, the place of residence of Hamill; and that Humbird had been summoned there as a witness for defence; that the counsel advised with Hamill as to selection of a jury, and general conduct of the case; that Price, the Canal Company's attorney, appeared in said case, on behalf of defence, and took part in the trial. The plaintiff also proved by Mr. Price, that he was the standing counsel of the Canal Company, for Allegany and Garrett Counties, in May, 1879; that he appeared in the last trial of said case, without any special order from the Canal Company, but for the protection of its interests: that it was his general duty to attend to litigation in which it was interested, in said counties; that he rendered a bill for his services in said trial, which the Canal Company paid.

The defendant then offered evidence tending to prove that the bridge, at the time of the accident to Eyler, was in good and safe condition.

The plaintiff then offered three prayers:

1. If the jury find that a public highway, in Allegany County, was cut and severed by the defendant, in the building of its canal, and that defendant built a bridge to unite said severed highway, and that the defendant subsequently allowed said bridge to fall into bad repair, and become unsafe for travel; and if they further find that Josiah Eyler, whilst crossing said bridge on horseback, in December, 1876, and using due care on his part, was injured by reason of the unsafe condition of said bridge, and that said Eyler sued the County Commissioners on account of said injury, and recovered judgment, and that said judgment has been paid by the now plaintiff, then the plaintiff is entitled to recover.

2. If the jury find that the now plaintiff was sued by Josiah Eyler, as set out in the plaintiff's first prayer, and if they further find that S. A. Cox, as the attorney for the now plaintiff, notified Mr. Gorman, the president of the now defendant, of the pendency of said suit, and requested him to defend the same, and that at the trial of said case, two of defendant's directors were present and assisted in the conduct of the defence ; and if they further find that Wm. M. Price was the standing counsel of the defendant, and appeared as counsel in said case in behalf of the Canal Company, and participated in the defence thereof with the attorneys of the then defendant, and rendered a bill to the now defendant for such services, which was paid by it, then the jury may find that the now defendant had notice of said suit, and participated in the defence thereof, and if they do so find, then the defendant is concluded by the verdict, and judgment in said case upon the question of the condition of said bridge, and upon the question of the fact, nature and extent of the injury to said Eyler, and upon the question of whether Eyler was exercising due care on his part, and upon the question of the amount of damages to Eyler by reason of said injuries.

3. If the jury find from the evidence, that Josiah Eyler recovered the judgment set out in the record offered in evidence, for injuries received by him while traveling upon the bridge spoken of by the witnesses, and that the defendant herein had notice of said suit and of Eyler's claim for damages, and the cause and nature of such suit and claim, and that the defendant employed counsel in that suit to assist the County Commissioners in its defence, and said counsel and two of the defendant's directors were present at said trial and assisted in defending said suit, then the jury is instructed that if they find for the plaintiff the true measure of damages is the amount of the judgment and costs recovered by Eyler set out in the said

record, with interest on the principal of such judgment to the present time, and such reasonable costs and counsel fees as they find from the evidence the plaintiff may have been obliged to lay out and expend in the defence of said suit.

And the defendant offered four prayers:

1. That the plaintiff is not entitled to recover the costs recovered in the former judgment against the County Commissioners, unless they shall also find that the Chesapeake and Ohio Canal Company had proper legal notice of the bringing of said suit, and could have been present and taken part in the defence at its first trial, or that said suit was defended at the request of, or for the benefit of the now defendant.

2. That the plaintiff in this cause, is not entitled to recover in this action, unless the jury shall find that the injury sustained by Eyler, (if they shall find that such injury was sustained,) was sustained without the negligence of the plaintiff, and that the plaintiff was not itself a wrong-doer.

3. That if the jury should find that the defendant had no notice of the pendency of said suit of Eyler against the now plaintiff, before the trial thereof, then the judgment recovered in case of Eyler against the now plaintiff, is not the true measure of damages in this case.

4. That there is not sufficient evidence in this cause to bind the defendant with a proper and legal notice of the pendency of the suit of Eyler against this now plaintiff.

The Court (PEARRE, J.) granted all of the plaintiff's prayers, and granted defendant's third prayer, and rejected its first, second and fourth prayers. The defendant excepted.

Jury sworn on the 5th February, 1881, and on the 7th February, 1881, returned their verdict in favor of the plaintiff for $3,397.64, according to the following statement handed to the clerk by their foreman:

C. & O. C. Co. *vs.* Co. Comm'rs of Allegany Co.

| | | |
|---|---:|---:|
| Judgment. ............................................. | $2,418 | 00 |
| Interest...................................................... | 251 | 47 |
| | $2,669 | 47 |
| Plaintiff's costs. ................................ | 379 | 58 |
| | $3,049 | 05 |
| Defendant's costs......................;........... | 248 | 59 |
| | $3,297 | 64 |
| Counsel fees.....................................:..... | 100 | 00 |
| | $3,397 | 64 |

Memorandum:—Judgment was rendered on verdict for the plaintiff, February 7th, 1881, for $3,397.64, with interest from date of judgment, and costs. The defendant thereupon appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY, ROBINSON, IRVING, RITCHIE and MAGRUDER, J.

*J. N. Willison, W. M. Price* and *C. J. M. Gwinn, Attorney-General,* for the appellant.

It was the primary and unqualified duty of the County Commissioners to keep the bridge in question in this case in repair. 49 *Md.*, 272. It was by the neglect of this duty primarily devolving upon the County Commissioners, that Eyler was injured. It was for the injury, thus inflicted, that he recovered judgment against the appellees in this case. Upon what theory is it, that the County Commissioners, who have thus been mulcted for their own neglect of a statutory duty, primarily devolved by law upon themselves, can recover back from the Canal Company

the amount which Eyler, the injured person, recovered from them? The condition of the bridge for the period of time, which must have elapsed to bring about its state, fixed the responsibility of the County Commissioners. *Winn vs. Lowell, Mass.*, 179; *Albrittin vs. Huntsville*, 60 *Ala.*, 494–5.

If the obligation of the appellees to the public was *primary and unqualified*, certainly no person or corporation not in the employment of the appellees, is liable to them for their neglect to fulfil such *primary* obligation, unless such liability over is cast upon such person or corporation, by some rule of the common law, or by some statutory requirement, or by some general or particular contract. If the obligation of the appellees to the public was primary and unqualified—if they had the exclusive power of prescribing the repairs, which would make the particular bridge safe and convenient for the passage of persons and property, and of directing the making of such repairs—and neglected this duty—can they recover back from the appellant the amount of a judgment recovered against them because of their neglect of the primary and unqualified duty devolved upon them by law?

It would seem that the common law obligation to keep the particular bridge in repair, devolved upon the Canal Company, 49 *Md.*, 272, had been abrogated by the Acts of 1853, ch. 239, sec. 11, and 1856, ch. 308, sec. 1, as codified in 1 Code, Article 28, secs. 1 and 11, amended by the Acts of 1865, ch. 85, and 1874, ch. 411. For certainly if a duty which one person or corporation is, by the common law or by statute, directed to perform, is by a subsequent statute, expressly directed to be performed by another agency, in terms which import necessarily the primary performance of such duty by the new agency, the obligation of the person or corporation originally charged with the duty is wholly determined. *Daw vs. Metropolitan*

*Board*, 12 *Comm. Bench*, *N. S.*, 174 ; 104 *E. C. L. Rep.*, 173.

It cannot be pretended that any statute imposed upon the appellant the obligation to keep the particular bridge in repair. The charter of the appellant contained no direction to this effect, although laws making such provision were familiar in our local legislation. The Chesapeake and Delaware Canal Company was placed under such obligation by the Act of 1799, ch. 16, sec. 17: and an analogous provision was made by the Act of 1825, ch. 224, where races, dug for the use of mills, intersected highways. No duty of making such repairs was created by any general, or special contract. Such common law obligation, as formerly existed, was modified by the provisions to which reference has been made. If any duty remained imposed upon the Canal Company, it certainly could be no other, except an obligation to pay for such repairs of the particular bridge, or for such renewal of the structure, as the County Commissioners might order by due authority and in pursuance of methods prescribed by law.

It would seem; therefore, that the primary, unqualified and exclusive liability for the consequences of the particular accident rested upon the County Commissioners, the appellees. It was *their* neglect of *their* primary duty, which was the primary cause of the accident to Eyler. They mainly and directly by not repairing the particular county bridge, which they were bound to repair, caused the injury by which he suffered. They were, therefore, directly, unequivocally and alone in fault.

There would seem to be no possible reason for attributing to the Canal Company any share in the negligence of the appellees, which was the proximate cause of the injury to Eyler. But if it were otherwise—if it can be imagined to be true that they were negligent in not assuming the duty, primarily belonging to the County Com-

missioners, of repairing the particular bridge, and so contributed, in part, to the injury of Eyler—is it not settled law that the appellees, who were themselves also in fault, cannot claim to be indemnified by the Canal Company, even if that Company was also in fault ?

It is a "maxim that no man can make his own misconduct the ground for an action in his own favor. If he suffers because of his own wrong-doing, the law will not relieve him. The law cannot recognize equities, as springing from a wrong, in favor of one concerned in committing it." *Cooley on Torts*, 144; *Addison on Torts*, *2nd Eng. Ed.*, 910; *Merryweather vs. Nixan*, 8 *T. R.*, 186, Lord Kenyon, C. J.; 2 *Smith's Lead. Cas.*, *6th Am. Ed.*, 527; *Adamson vs. Jarvis*, 13 *E. C. L. Rep.*, 346; *Colburn vs. Patmore*, 1 *Cr. M. & Rosc.*, 83; *Percy, et al. vs. Clary*, 32 *Md.*, 250, 251. The same rule of law is laid down in the case of *Chicago City vs. Robbins*, 2 *Black.*, 424, 425, referred to with approbation as a controlling authority in 49 *Md.*, 276. "One or two joint wrong-doers cannot have contribution from the other." The particular rule would seem to be decisive of the question in controversy.

The case under discussion is not within any of the admitted exceptions to this general rule. *Lamplegh vs. Braithwaite*, 1 *Smith's Lead. Cas.*, *6th Ed.*, 274; *Percy, et al. vs. Clary*, 32 *Md.*, 250, 251. It is perfectly plain that in view of the statutory obligation, resting upon the appellees to keep this bridge in repair, it cannot be said that, as between the appellant and the appellees, the appellant only was in fault. The obligation of the appellees to inspect the particular bridge, and to see that it was properly repaired, was a plain and manifest duty, the neglect of which was a violation of law. *Bostwick vs. Barlow*, 21 *N. Y. Sup. Ct.*, (*Hun.*) 179–180; *Rappo vs. Moore*, 68 *Penn. St.*, 408–409. If it can be claimed to have been the duty of the appellant to undertake, or pay for such repairs, it could only have been its duty to do so, when

instructed by the appellees as to the manner in which such repairs ought to be made, or when informed by them of the amount payable for such repairs, when they were completed under the orders of the appellees. *Penn. R. R. Co. vs. Duquesne Borough,* 46 *Penn. St.,* 227–228.

No such instructions were given, and no repairs were made by the appellees themselves. They must have known that their omission of duty was unlawful. They must have known that, having exclusive charge of, and control over, the particular bridge, the Canal Company could not interfere with the bridge, except at their request and by their permission. They knew that, as between themselves and the Canal Company, the Canal Company was not the wrong-doer, because the bridge was not subject to its control, but to theirs only. As they knew that they were doing an unlawful act, when they neglected to repair this bridge, they ought not be allowed to make the Canal Company pay the damages caused by their own negligence. *Cooley on Torts,* 144–149; *Smith vs. Wright,* 24 *Barb., N. Y.,* 172; *Adamson vs. Jarvis,* 4 *Bing.,* 13 *E. C. L. Rep.,* 346; *Merryweather vs. Nixan,* 8 *T. R.,* 186; *Percy, et al. vs. Clary,* 32 *Md.,* 250; *Chicago City vs. Robbins,* 2 *Black.,* 422; and 4 *Wallace,* 670, adopted in *Flynn vs. Canton Co. of Balto.,* 40 *Md.,* 329.

For the reasons assigned, there was error in granting all of the plaintiffs' prayers, and in rejecting the defendant's second prayer. *Chicago City vs. Robbins,* 2 *Black.,* 422, and 4 *Wallace,* 670; *Flynn vs. Canton Co. of Baltimore,* 40 *Md.,* 326; *Dillon on Municipal Corporations,* sec. 795, and cases referred to in note.

There was error also in granting the plaintiffs' second prayer, because such notice was not proper notice to a corporation, and even though the Canal Company would be bound by such notice, it was given too late, and in not submitting the time when the notice was given, was misleading.

APRIL TERM, 1881.                   211

C. & O. C. Co. vs. Co. Comm'rs of Allegany Co.

The plaintiffs' third prayer should have been rejected. *Dillon on Municipal Corporations*, sec. 796 ; *Inhabitants of Westfield vs. Mayo*, 122 *Mass.*, 100, reported in 23 *American Reports*, 292, and the cases there cited in the opinion of the Court.

Not only was there no notice given to the Canal Company of the pendency of this suit, until the case had come back from this Court, and a great part of the costs incurred, but that suit was defended neither at the request of, nor for the benefit of the Canal Company. The ground of defence in that action on the part of the County Commissioners, was that the Canal Company was the sole and only party responsible. *Eyler vs. County Commissioners of Allegany County*, 49 *Md.*, 257 ; *Lowell vs. Boston & Lowell Railroad*, 23 *Pick.*, 24.

For these reasons also, the Court was in error in reject·ing the defendant's first and fourth prayers.

*Benjamin A. Richmond*, for the appellee.

That the Canal Company is responsible over to the appellee for the defective condition of the bridge, has been fully and conclusively settled by the opinion of this Court in *Eyler's Case*, (49 *Md.*, 276 ;) apart from that, the Supreme Court of the United States, as well as the Courts of the States, seem to have had no difficulty in coming to the same conclusion. *Robbins vs. City of Chicago*, 4 *Wallace*, 657 ; *Lovejoy vs. Murry*, 3 *Wallace*, 18 ; *Worcester vs. Eaton*, 11 *Mass.*, 377 ; *White vs. Franklin Bank*, 22 *Pick.*, 181.

The appellant's tenth plea and second prayer, seem to be based on the idea, that if the appellee and appellant were both wrong-doers as to Eyler, they were necessary *equally* so, that is, *in pari delicto*, and, therefore, one cannot recover from the other any damages that were occasioned by a joint wrong. But although they were each undoubtedly liable to Eyler, yet that did not change the relations

and obligations existing between the appellant and appellee, prior to and at the time of the accident. The bridge was erected to suit the convenience of the Canal Company, to facilitate its construction through the county, and was of no possible benefit to the county. The Canal Company was bound to maintain the highway it had destroyed for its own benefit. *Leopard's Case,* 1 *Gill,* 230; *Eyler's Case,* 49 *Md.,* 269; *Northern Central Railway Co. vs. Mayor and City Council,* 46 *Md.,* 425.

The Canal Company being responsible to the appellee, as settled by the decision in 49 *Md.,* the next question is: How far is the former judgment conclusive upon the appellant upon the facts which necessarily went to make up the recovery in that case? This question arises upon the demurrer to the second replication, and the second prayer of the appellee.

To avoid circuity of action, and that a limit should be fixed to the continuance of litigation, judgments between the same parties respecting the same cause of action, are conclusive in subsequent proceedings. That the subject-matter of this suit was the same as in the former case, there can be no doubt. The condition of the bridge, the amount of damages to Eyler, and whether he contributed to the accident, were inquiries which would have had to be gone into precisely the same as in the former suit. Was the second suit (in legal contemplation,) between the same parties?

" Parties in that connection include all who are directly interested in the subject-matter, and who had a right to make defence, control the proceedings, examine and cross-examine witnesses, and appeal from the judgment." *Robbins vs. City of Chicago,* 4 *Wallace,* 672.

This was said in that case in deciding the very point at issue here. If the simple notice to Robbins in that case of the pendency of the former suit, and his naming a witness to be summoned, was sufficient to make him so far a

party as to render the judgment in that case conclusive upon him in the second suit, surely the early written notice to the appellant, given by the appellee, the appearance of the appellant's regular attorney in the suit, his participation in the trial, the presence of two of appellant's directors at the trial, and their assistance in selecting the jury, and upon the witness stand, was abundantly sufficient to accomplish the same purpose. The appellant "was interested in the subject-matter, had a right to, (and did,) make defence, control the proceedings, examine and cross-examine witnesses," and would have been permitted to have "appealed from the judgment," had it so desired. It is therefore concluded in this suit upon the whole subject-matter involved in the former case. 4 *Wallace*, 672 ; 1 *Greenleaf on Ev.*, 559.

As to the appellant's fourth prayer, upon the sufficiency of notice to appellant of the pendency of Eyler's suit, we simply desire to say, that if the direct notice given by Mr. Cox, appellee's attorney, to the president of the appellant, the subsequent written notice, the appearance of the appellant's regular attorney in the case, his participation in the trial, the presence of two of the appellant's directors, their assistance of the defence, and the subsequent payment by the appellant to its attorney without objection, his account rendered for fees earned in that very trial, do not constitute notice to the appellant of the pendency of that suit, it is hard to conceive how "proper and legal notice" could be given. The fourth prayer of the appellant was of course properly rejected.

If the appellee is right in assuming that the former judgment was conclusive upon the appellant in this case, the full amount of the judgment, the interest thereon, and Eyler's costs were of course proper to be allowed by the jury. His costs were a part of *his* judgment, and the interest was a necessary consequence flowing from the same.

Whether in an ordinary case of responsibility over, the plaintiff can recover his own costs and counsel fees from the party finally held responsible for the judgment, is not entirely clear from the authorities, but the authority of *Lowell vs. Boston Railroad Company,* 23 *Pickering,* 24, relied upon by the appellant in this point, we think, falls far short of the present case. There the City of Lowell had direct notice prior to the plaintiff's injury, that the railroad company was making the excavation in its streets. The city could have protected itself from loss by the exercise of ordinary diligence in seeing that the railroad company properly kept up the barriers around the excavation. While the railroad company was in fault, in a moral, as well as legal sense, the city was also to blame, and it might have been proper in that case te compel the city to stand its own expenses of the defence, as its just proportion of responsibility for a joint default.

The present case is very different. The Canal Company allowed the bridge to fall into bad repair of which the appellee had no notice whatever. The Canal Company was not only legally liable to maintain the bridge, but recognizing that fact in its full significance, it had, in fact, for more than twenty years assumed entire control of it, and professed to be keeping it in safe condition. Under these circumstances therefore, justice would seem to demand that the appellant should be chargeable with all proper expenses incurred by the appellee in defending a suit which arose wholly and directly through the negligence of the Canal Company. Without fault of its own, the appellee was saddled with a serious legal responsibility. In procuring counsel and witnesses, and paying them their legitimate fees, it was endeavoring to reduce the amount of the verdict which the real wrong-doer (the Canal Company) was finally bound to pay. So that these expenses were practically incurred on behalf of and for the use and benefit of the appellant. The case is an ex-

traordinary one of its kind, and we think it fully justified the Circuit Court in putting the whole legitimate consequences of the appellant's neglect upon its own shoulders; and that the true measure of damages was set forth in the appellee's third prayer. 66 *Maine*, 485; 27 *Conn.*, 158; 4 *Cush.*, 275; 9 *Allen*, 17; 24 *Vermont*, 155.

RITCHIE, J., delivered the opinion of the Court

This case has its origin in that of Eyler against the present appellee, heretofore reviewed by this Court, and reported in 49 *Md.*, 257.

The facts of that case entering into this are, that, Eyler brought his action against the said Commissioners to recover damages for injuries sustained by reason of the defective condition of a bridge across the Chesapeake and Ohio Canal, over which he was riding on horseback. The road on which this bridge is situated is a public county road in Allegany County, and was such before the canal was made. This road, the Company, in constructing its canal, cut in two, and connected again by the erection of a bridge, which bridge having been burnt down during the late war, the Company replaced it with the one on which the accident to Eyler occurred.

The County Commissioners resisted that suit mainly on the ground that the Canal Company was by law bound to erect and keep in repair the said bridge, and that therefore the action should have been brought against it. This defence the learned Judges below sustained; but on appeal to this Court their judgment was reversed, and Eyler was awarded a new trial.

When the record was sent back the case was removed to Garrett County, and tried at the May Term, 1879, the trial resulting in a judgment for the sum of $2418.00 damages, and $379.58 costs, against the Commissioners.

This judgment the Commissioners paid, and thereupon instituted suit against the appellant to recover back the

amount of the damages and costs so paid, with the interest accrued thereon, and also all the costs and counsel fees incurred by them in conducting the defence. In this suit they were successful, the jury finding a verdict in their favor for $3397.64, a sum which according to their calculation, as shown by a statement handed to the clerk by the foreman, was made up of the several items claimed as aforesaid. On this verdict judgment was entered, and from this judgment the present appeal was taken.

The *narr.* after setting out the facts relating to the bridge, Eyler's injuries, his suit and recovery thereon, proceeds with the averments that the obligation was upon the appellant to keep the said bridge in safe condition, that the appellant had notice of the said suit of Eyler and participated with the appellee in defending the same, and that it was bound in law to re-imburse the appellee all its said payments and expenditures, but that although so bound, and notwithstanding demand therefor, had neglected and refused so to do.

The grounds upon which the appellant seeks a reversal of the judgment below, are succinctly stated as follows: First, that the Canal Company, if bound to erect a bridge at the time it cut through the road, which was about the year 1846, has been relieved of that duty by operation of our statutes since enacted, which declare that the County Commissioners " shall have charge of and control over the county roads and bridges," and "may build and repair bridges, and levy upon the property of the county therefor." Secondly, that even conceding the Canal Company was under obligation to keep the bridge in safe condition, the Commissioners have no right of action over against the Company, because this Court in *Eyler's Case* decides that the law imposed upon the Commissioners a primary and unqualified obligation, so far as the public is concerned, to maintain and keep the bridge in proper repair, and that by virtue of this responsibility, and from

having neither compelled the Canal Company to make the bridge safe for travel or done so themselves, the appellee was *in pari delicto* with the Company, and as a joint wrong-doer could not recover or have contribution from the Company. Thirdly, that no such notification was given the Company of Eyler's suit, as would render the judgment in that case binding upon it; and lastly, that if erroneous in the foregoing propositions, and the appellant is affected at all by the litigation between Eyler and the Commissioners, it is not concluded by it to the extent of the present judgment, because as it alleges, a portion of this judgment is for costs and counsel fees incurred by the Commissioners exclusively in their own behalf at the first trial with Eyler, and on the appeal therefrom, to neither of which proceedings it claims was it actually or constructively a party, nor notified to participate in them.

In expressing our views upon the points thus made by the appellant; its demurrers to appellee's *narr.* and replication, and its exception to the Court's ruling on the prayers are necessarily disposed of, and they need not therefore be considered in detail.

We do not think it open to dispute, that the Canal Company was bound in law to connect again by suitable means, any public road severed by it in constructing its canal. This was expressly decided in the case of *Leopard vs. The Ches. & Ohio C. Compang*, 1 *Gill*, 229. The principles underlying that decision have been repeatedly recognized by this and other Courts. They have been frequently applied in the excavation of streets and thoroughfares by railway companies, and other disturbances of highways. The cases of *Dygert vs. Schenck*, 23 *Wendell*, 446, and of *Trustees of Burton Township vs. Tuttle*, 30 *Ohio St.*, 68, are especially analogous to the present one. They arose from injuries received by persons from the defective condition of bridges erected by the

owners of the soil, where they had cut through public roads in constructing raceways to their mills.

In the former case, Cowen, J., in delivering the opinion of the Court, thus defines the relations of the owner of the land and the public :

" The defendant certainly committed no trespass in digging the ditch. It was his own soil. The only right adverse to his, was one to have a common highway for the purposes of travel. All the public could require was that he should make and keep the road as good as it was before he dug the ditch. That he accomplished by building a substantial bridge originally, which did not get out of repair for a number of years. The road however, in the end, proved to be less safe than it was when the bridge was first built, certainly less so than before the ditch was dug. In suffering this, the defendant came short of his obligation to the public." In the *Ohio Case,* the Court, using almost the same language, says: " The owner committed no trespass in digging the ditch through his own soil, but what the public can require is, that when he cuts the highway, he should make and keep the road as good and safe for the public, as it was before he dug the race. This can be accomplished by building and keeping a substantial bridge over the race at the crossing."

It may be here observed of the argument made by appellant's counsel, that by the terms of its charter and necessary implication therefrom, the Canal Company was invested with the power to destroy public roads where necessary to cross them, without liability to restore the means of travel over them, that the same claim was urged by the Company's counsel in *Leopard's Case,* in 1 *Gill,* but was there distinctly negatived by the Court in these words :

" Such a proposition we think is not warranted by any act of legislation before us, and nothing but a grant of such a power in terms the most full and unequivocal, would

induce this Court to believe that the Legislatures referred to, designed to confer it. Such terms are not to be found in the charter of the Canal Company, and we do not deem it necessary to use arguments or illustrations, to show the non-existence of such a power."

That the Canal Company itself has recognized its obligation to maintain a bridge where Eyler was injured, is shown by its erection of one at that place shortly after it severed the road, and when it was burnt down during the war, by erecting the present one.

And in regard to this identical bridge, this Court in the case referred to in 49 *Md.*, thus explicitly states the effect of previous decisions, and its own concurrence therewith : " It is therefore certain that the duty of maintaining and keeping this bridge in repair, is devolved upon the Canal Company."

It is simply for the additional security and convenience of the public, that the County Commissioners are held primarily responsible for the safe condition of the bridge, and not in anywise to lessen the obligation of the Canal Company to keep the same in repair.

And so far from meaning to imply, in declaring this duty of the Commissioners towards the public to be primary, that the Canal Company could not be held answerable over to the Commissioners, on page 276 of the opinion in 49 *Md.*, we expressly say : " But while we thus maintain the liability of the Commissioners to the appellant in this action, the Canal Company is by no means discharged from its obligation to maintain and repair this bridge ; nor are the Commissioners left without remedy against the Company. Upon the principles decided in many of the cases referred to, as also by the Supreme Court of the U. S., in *City of Chicago vs. Robbins*, 2 *Black.*, 418, and 4 *Wallace*, 657, they may have their remedy over against the Company, for whatever damages may be recovered against them in this action."

Nor do we perceive from the nature and facts of this case any ground for defeating the appellee's suit, because of the principle of *pari delicto.*

It is well settled that as to the public or third persons, one of two parties may be held primarily responsible, without diminishing the obligations of the other, or impairing the right of action over against him. The facts from which the cases in 2 *Black.* and 4 *Wallace,* just referred to, arose, were, that one Robbins having wrongfully left uncovered, an excavation in the sidewalk next his lot, a certain Woodbury, in passing along the street fell into it and was injured. For this injury he brought suit against the City of Chicago, and recovered a judgment, which the city was forced to pay. The city thereupon brought suit against Robbins, to recover from him the sum it had so paid. The Court say, that although a municipal corporation, having the exclusive care and control of the streets, is obliged to see they are kept safe for the passage of persons and property, and is primarily liable to one who has been injured in consequence of default in this respect, the corporation has a clear remedy over against the party who has so used the street as to produce the injury.

The general rule of law relating to the defence of *pari delicto* is, that where two parties participate in the commission of a criminal act, and one party suffers damage thereby, he is not entitled to indemnity or contribution from the other party. But it is not every case even of *particeps criminis,* or of actual co-operation in the offence, in which a party is precluded from recovering of his co-delinquent. This is illustrated in the well-known case of *Williams vs. Hedley,* 8 *East,* 378, which was an action for money had and received, brought to recover the sum of £965, as having been unduly obtained by the defendant from the plaintiff, under an agreement to compromise a *qui tam* action for penalties of usury, brought by the

defendant against the plaintiff. There the plaintiff's action was sustained, although the rule is recognized as applying when " the act is in itself immoral or a violation of the general laws of public policy."

A later case in this country exactly in point, is that of *Inhabitants of Lowell vs. Boston and Lowell R. R. Corporation*, 23 *Pickering*, 24, a leading authority in Massachusetts, on the doctrine of *pari delicto*, in connection with actions like the present. In that case, from the similarity of the grounds of defence to those in this, the Court passes upon most of the questions raised here. The declaration sets forth in substance, that the plaintiffs were bound to keep in repair a certain highway; that the defendants while having the right to use that highway, for the purpose of removing stone and rubbish from the deep-cut, made for the passage of their railroad, removed certain barriers which had been placed across the highway, to protect travellers from falling into the deep-cut, and neglected to replace the same; that in consequence thereof, two persons named Currier and Smith, while driving along such highway, were precipitated in the deep-cut and greatly injured; and that by reason thereof, those persons brought their actions, and recovered large sums of money against the plaintiffs, which plaintiffs were compelled to pay, together with witness fees, counsel fees and other expenses attending the defence of such actions, amounting in the whole to more than $8000.

The Court expressly overrules the defence of *pari delicto* there taken, and sustains the city's right of action over against the railroad company.

In the course of its opinion, the Court announces : " The general rule of law is, that where two parties participate in the commission of a criminal act, and one party suffers damage thereby, he is not entitled to indemnity or contribution from the other party. * * * The rule is *in pari delicto potior est conditio defendentis*. If the

parties are not equally criminal, the principal delinquent may be held responsible for damages incurred by their joint offence. In respect to offences in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and Courts will not inquire into their relative guilt. But where the offence is merely *malum prohibitum*, and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrong-doers." And after reviewing a number of authorities in which this application of the doctrine is adopted, the opinion proceeds : "This distinction is manifest in the case under consideration. The defendants' agent who had the superintendence of the works, was the first and principal wrong-doer. It was his duty to see to it, that the barriers were put up when the works were left at night; his omission to do it was gross negligence, and for this the defendants were clearly responsible to the parties injured. In this negligence of the defendants' agent, the plaintiffs had no participation. Their subsequent negligence was rather constructive and actual. * * * If the defendants had been prosecuted instead of the town, they must have been held liable for damages, and from this liability they have been relieved by the plaintiffs. It cannot be controverted therefore, that the plaintiffs' claim is founded in manifest equity. The defendants are bound in justice to indemnify them so far as they have been relieved from a legal liability, and the policy of the law does not in the present instance interfere with the claim of justice. The circumstances of this case distinguish it from those cases, where both parties are *in pari delicto*, and one of them having paid the whole damages, sues the other for contribution."

A common instance in which a party by operation of law is treated as a wrong-doer, and held primarily responsible to the injured party, although not the actual tres-

passer, is that of towns or cities whose streets are rendered dangerous by railway corporations in constructing their roads, or by their own citizens in the course of erecting buildings or making other improvements. While the decisions are uniform that public necessity, and the nature of their obligations, require that municipal corporations should be held liable for the safety of their thoroughfares, the doctrine of *pari delicto*, though frequently invoked against them, has never been applied because of their constructive default when they have sought re-imbursement from the actual authors of the trespass, or nuisance which has caused them to be sued. From among numerous cases to this effect we may cite as explicitly in point, the cases in 2 *Black.*, 4 *Wallace* and 23 *Pick.*, already quoted, and those of *Portland vs. Richardson*, 54 *Me.*, 46 ; *Portland vs. Atlantic and St. Lawrence R. R. Co.*, 66 *Me.*, 486 ; *Boston vs. Worthington, et al.*, 10 *Gray*, 496 ; *Milford vs. Holbrook*, 9 *Allen*, 17.

In the case in *Gray* the city recovered the amount of a judgment paid by it, because of injuries received in consequence of the proprietor of a cellar-way having neglected to protect it by a railing, as required by an Ordinance of the city, although the Ordinance had been disregarded for twenty years. And in the case in *Allen* it was expressly ruled that the town of Milford in a similar action could not be deemed *in pari delicto* with one of its inhabitants, who had allowed his awning to fall through neglect and injure a passer-by. HOAR, J., remarking, in the delivery of the opinion, "the only fault or negligence which could be imputed to the town on the facts shown, was a failure to remedy a nuisance which the defendant had caused. This is no bar to their claim for indemnity."

The case now before us comes directly within the scope of these decisions. The appellee, under the evidence in this cause, cannot be charged with more than a constructive default. It is not even in proof that the defect in

the bridge was known to the Commissioners, or that it was plainly obvious or of long standing. The defence of *pari delicto* is clearly not applicable in this case.

We deem it pertinent here to observe, from the course of the argument, that had the Commissioners known of the defect in the bridge, and the Canal Company, after demand, had failed to repair it, the former would have had the right to do so, and to resort to the company for indemnity for the necessary outlay. And it is proper that we should say, further, that the party injured could have sued the Canal Company, instead of the present appellee, if he had elected so to do. The remedy against the Commissioners is cumulative; and it is well settled that a party injured may if he see fit, proceed directly against the party actually guilty of the *tort*, and against whom an action over for indemnity will lie.

In proceeding to consider how far the Company was concluded by the judgment obtained by Eyler against the Commissioners, it is proper to dispose of the objection made to the sufficiency of the notice to the appellant of the pendency of the suit in which it was recovered.

The authorities clearly establish, most of those already cited going to that point, that the form of the notification to a party whose default has caused the institution of the suit, and from whom it is intended to seek indemnity, to appear in and defend the same, is not material. It is sufficient if he is substantially apprised of the nature of the proceeding and is afforded opportunity to make his defence.

The proof shows that the president of the Canal Company was distinctly notified, both verbally and in writing of Eyler's suit, and that the appellant through two of its directors and its standing counsel appeared and took part in the management of the case, the authority of the latter being distinctly recognized by the Company's compensating him for his professional attention.

In the light of these facts it is unnecessary to define what kind of notice would have been required to bind the appellant had it failed to attend the trial, or, in that event, to what extent it would have been concluded by the judgment. The fact being that the Company did actually participate in the trial and became in effect a party to the suit, and made as full defence, both on the law and the merits as if the action had been brought directly against itself, we consider that it is bound by the judgment that was rendered.

In this view we are supported by the expressions of the Supreme Court in 4 *Wallace*, 672, in passing upon the same legal question. They say, " Conclusive effect of judgments respecting the same cause of action and between the same parties rests upon the just and expedient axiom that it is for the interest of the community that a limit should be opposed to the continuance of litigation, and that the same cause of action should not be brought twice to a final determination.

" Parties in that connection include all who are directly interested in the subject-matter, and who had a right to make defence, control the proceedings, examine and cross-examine witnesses and appeal from the judgment. Persons not having those rights substantially are regarded as strangers to the cause, but all who are interested in the suit and have knowledge of its pendency, and who refuse or neglect to appear and avail themselves of those rights are equally concluded by them. See also 3 *Wallace*, 18 ; 2 *Black.*, 418 ; 2 *Taylor on Evi.*, sec. 497 ; 1 *Greenleaf on Evi.*, 12 *Ed.*, p. 559.

The only remaining question presented in the record, not disposed of in the views above expressed, is whether the appellant can be held liable for the amount of the counsel fee incurred by the Commissioners in defending the suit. As no point was made as to the reasonableness of the fee for the duties performed, and no objection was urged at the time to the employment of the counsel, whose

services in fact enured to the benefit of the Company, the simple inquiry presented is, whether in conducting a defence made necessary by the default of another who is answerable over, the services of an attorney are a natural and proper incident or consequence to such a proceeding. We cannot regard them in any other light. Practically, the ordinary citizen is incompetent to conduct the trial of his case. Only such as are learned in the law can intelligently do this for him, and without their assistance he would be at a great and unfair disadvantage. The law itself regards attorneys as an essential aid in the administration of justice; and recognizes them as officers of the Court, with peculiar obligations as such, in order that suitors may have the full benefit of their acquirements, skill and training in the management of their causes. To be compelled to go to trial either without the assistance of counsel, or to bear the expense of employing one himself, would be a gross hardship upon a defendant who is sued upon a constructive liability, because of the actual default of another for whose benefit the defence is really conducted, and to whom the law declares it is equitable he should have recourse for indemnity.

In this view we are supported by the decision in a late case, *Inhabitants of Westfield vs. Mayo*, 122 *Mass.*, 100, where the question of the allowance for counsel fees in a similar case was distinctly presented, with a copious citation of authorities and full argument.

It was an action of *tort* to recover the amount of a judgment paid by the plaintiff to Mary J. Hanchett for injuries sustained by her upon a highway which the plaintiff was bound to keep in repair, through the negligence of the owner of a pile of bricks, and also $150, the expenses of the suit in which the judgment was recovered.

The Court expresses its conclusion in these words: "If a party is obliged to defend against the act of another against whom he has an action over, and defends solely

and exclusively the act of another, and is compelled to defend no misfeasance of his own, he may notify such party of the pendency of the suit and may call upon him to defend it; if he fails to defend, then, if liable over, he is liable not only for the amount of the damages recovered, but for all reasonable and necessary expenses incurred in such defence. * * * * In the present case the plaintiff was not compelled to incur the counsel fees by reason of any misfeasance or of any contract of his own, but was made immediately liable by reason of the wrong-doing of the defendant. There seems, therefore. to be no ground in principle by which it should be precluded from recovering the expenses reasonably and properly incurred in consequence of the wrong-doing of the defendant."

If the point had been expressly presented and clearly set out and supported in the evidence, that part of the amount sued for outside of the judgment for damages, consisted of specific items of costs and expenses incurred in the first case, and that the defence was there conducted solely in behalf of the appellee without the knowledge of or opportunity to participate therein by the appellant, objection to the judgment appealed from to the extent of such items would have been valid. But we may fairly infer from the testimony of the witness, Mr. Cox, as it is set out in the record, that the company was made aware of the first trial; and so far as the statement accompanying the verdict of the jury informs us we are not advised that any costs were computed by them; but those incurred after the case was remanded from the Court of Appeals. In the absence of proof to rebut these presumptions, the verdict and judgment are entitled to all intendments in their favor.

It follows from the conclusions we have announced, that the judgment below must be affirmed.

*Judgment affirmed.*

(Decided 31st July, 1881.)