## CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed November 21, 1894.

THOMAS G. BRADY

VS.

BALTIMORE BELT RAILROAD
COMPANY, ET. AL.

*John P. Poe* and *Henry E. Baltzell* for plaintiff.

*Cowen & Cross* for defendants.

WICKES, J.—

Elm street, referred to in this case, was laid out by the commissioners appointed in 1881 by the Circuit Court of this city to make partition among the heirs of the real estate of the late James Piper, described in the proceeding. They filed with their report a plat on which the lots are designated, and among them certain lots which the complainant holds under ninety-nine-year leases, bordering upon what is called Elm street on the map, which extends from Townsend street a distance of sixty or seventy yards to the limit of the land so laid out.

The Belt Railroad Company, in the construction of its tunnel through the city, has reached the point of intersection of Elm and Townsend streets, and claims the right by virtue of its charter and under the authority of a city ordinance to destroy both these streets *qua* streets, by digging down twenty feet below the surface, directly across Townsend and the entire width of Elm street at and above the point of intersection. Indeed, the excavation has already been partly made, and the intention is avowed to complete the work and leave the surface open and impassable. In other words, the total destruction of these streets is contemplated at this point, and with it the right of way which the complainant has hitherto enjoyed over Elm street.

It is proper to say that the defendants have acquired the fee in the bed of Elm street co-extensive with the excavation they have made, and do not propose to construct their line in the immediate front of plaintiff's lots, or to touch his property in any way.

The defendants admit the injury to Mr. Brady, and aver their readiness to respond in damages whenever he shall recover against them in an action at law, but deny that they are "taking" his property in the constitutional sense, and cannot therefore be enjoined from proceeding with their work until compensation is made. Their contention is that the case is ruled by the recent decisions of the Court of Appeals in O'Brien's case, in 74 Md., and the unreported case of Garrett vs. The Lake Roland R. R. Co.

In the O'Brien case the alleged "taking" consisted of a partial interference with the public street on which the plaintiff's property abutted, by an open cut, but the learned judge who delivered the opinion took occasion to say "it is not charged or in any way claimed that the plaintiff will be deprived of or seriously hindered in the right of access to his property from the street by the making of the cut * * * The street, after the cut is made, will still remain in front of the plaintiff's property on the east side of the cut, about forty-one feet wide. There is no question therefore presented here as to the right of the plaintiff to compensation for obstructing access to his property from the street." And again said the learned judge who delivered the opinion of the Court in the Garrett case, in speaking of an abutment built in the centre of the street, "it does not destroy the street as a street, though it may cause the plaintiff greater inconvenience in gaining access to his lots that he encountered before it was built," so that the cases relied upon and the present case are essentially different in their facts, for here the destruction is absolute and complete and the plaintiff will be entirely cut off from all access to his property over the bed of Elm street. It is therefore necessary to examine the cases relied on and ascertain whether the principles so firmly settled by them apply to the facts before us.

In the case of the M. & C. C. of Cumberland vs. Willison, 50 Md. 138, a leading case on this subject, the city by grading a street, had caused a large flow of surface water to enter the mill race of the defendant and as was argued, convert it "into the main sewer of the city, thus virtually ruining the water power" and depriving the appellee of his property. But in a very carefully considered opinion the Court held that as there was no actual invasion of the property by the deposit of sand, water, earth or other materials upon it, or by placing any artificial structure upon it so as to impair or destroy its usefulness, it was not a taking of private property, within the meaning of the constitutional provision.

In the O'Brien case to which reference has already been made, the Court said, "it is not charged that there will be any invasion of or physical interference with any part of the plaintiff's lot in the construction of the road. The most that he claims for is that he will be deprived of the full use of the street, as it now exists, and that his property will be depreciated in value by the construction of the road. This, however, is but an injury, *to whatever extent it may be suffered, of an incidental or consequential nature.* The construction of a railroad being authorized by competent authority, it cannot be treated as a public nuisance, and no right of action can arise against the company before it is known whether and to what extent damage may be sustained by the construction of the road in the bed of the street. In such case as this, therefore, it would seem to be clear, both upon principle and authority, that there is no such taking of private property for public use as is contemplated by the Constitution of the State." The Court then proceeds to point out the remedy, under the ordinance and the code, for injuries done by the construction of the road to private property lying upon or near to such location, saying "that the legal remedy thus provided would seem to be ample to protect the plaintiff in his rights."

In the Garrett case, which was twice argued and certainly most carefully considered, the principle is perhaps more strongly stated. The Court in deciding the case said, "that there was no actual appropriation of or entry upon a single foot of land contained within the outlines of the appellant's deed is admitted and could not be denied; and therefore to support the theory of the bill, the *consequences* which it is asserted will result to the appellant from the occupancy by the railway of contiguous land forming part of the bed of a highway and owned by some one else but subject to an easement in the public, and which consequences are not a physical invasion of the plaintiff's soil nor an ouster of him therefrom, are treated by the appellant as a taking of that which is confessedly neither encroached upon nor used at all. The consequential damages resulting from the act complained of—the incidental injuries to the owner—are thus charged to be a taking of private property for a public use though the property itself remains unappropriated and unapplied to that use in any way however.

And again said the Court: "An injury to and a taking of such property are distinct things. Every taking involves an injury of some kind, though every injury does not include a taking. *Property is taken by entry upon and appropriation of it, as in the ordinary case of location.* It is injured by obstructing access, as in Denmeans case, or drainage as in Zerriers case."

It is true, as already stated, that in both the O'Brien and the Garrett cases the question arose upon the partial obstruction of a public street, while here the destruction of the easement is complete. This, it is said, distinguishes this case from those that have preceded it, and because of the destruction, constitutes it a taking, where if only partial, the injury would be consequential. But as I understand, the principle decided by the Court of Appeals, it is that there can be no taking, unless in the case of the actual invasion of the property. It may be by location; it may be by backing water upon it, or it may be by depositing sand, or any foreign substance upon it. But in every case there must be some appropriation, or occupation, or physical injury as distinguished from the consequential damage resulting from some interference which does not affect the corpus of the property, no matter how much it may impair its value. Certainly the language of the

Court bears no other interpretation. Said Alvey, C. J., in O'Brien case: "This, however, is but an injury, *to whatever extent it may be suffered,* of an incidental or consequential nature."

Said the learned judge who delivered the opinion in the Garrett case: "Property is *taken* by entry upon and appropriation of it, as in the ordinary case of location. It is *injured* by obstructing access to it."

If this rule, which seems to be so firmly settled, is to depend upon the extent of the injury inflicted, it seems reasonable to suppose that some qualification of its application would have been suggested. If it applies when half the street is occupied by an open cut, as in O'Brien's case, and again, when only nine feet of open way remains in front of the property, as in Garrett's case, when does it cease to apply? Is the question of whether property is taken or injured, to depend upon how much or how little of the street is occupied? Or, is that to be regarded as an element of damage to be ascertained in a suit at law?

Understanding these cases as I do, it is difficult to arrive at any other conclusion than that they rule the question before me so far as the plaintiff's rights are to be considered from the standpoint of an abutting owner on a public street.

Upon this ground, and this alone, the oral argument was heard, but other questions have been introduced into the case by the brief filed by the learned counsel who appeared on the plaintiff's behalf.

It is now contended, that the plaintiff had a private easement in Elm street, distinct from the public, which could only be taken away by the acceptance of the street by the City of Baltimore, and that as no such acceptance ever took place that therefore the private easement cannot be destroyed without constituting a "taking" in the constitutional sense.

When these lots were leased to the plaintiff with reference to the plat filed by the Commissioners in the partition proceeding, the legal effect was an implied covenant from the grantor to the grantee, that he should have a right of way or easement in Elm street as appurtenant to his property, which the grantor, or anyone claiming under him

as owner in fee of the bed of the street, would be estopped from denying. White vs. Flannigan, 1 Md. 525, 72 Md. 577. That was the private right of the plaintiff for which he paid, and as has been repeatedly held in this State, if the city had accepted the street and proceeded to open it, the grantor would have been entitled to only nominal damages for the reason that he had already been paid by the purchaser for the public as well as the private easement.

On the other hand the effect of so platting and selling these lots, was an *incipient* dedication of Elm street to the public, because the implied covenant was that it should be kept open as a public way for the lot owners primarily, and incidentally for the public. It was undoubtedly in the power of the city to accept it or not. But that it never was accepted is admitted all through the case (45 Md. 524). On the contrary the city has continued to tax it (67 Md. 500), and the lot owners holding this right of way have paid the taxes. The city never regarded it as a street worth having for any public purpose and from the moment of its dedication until now, it has never exercised the slightest authority over it. Now, it may be conceded that a municipality under our Constitution may do pretty much as it pleases with its streets without incurring liability to abutting owners of property, or may arm a railroad company with like power, subject, of course, to the rule of law which requires payment for consequential injuries, which, if inflicted by the city, would be *damnum absque injuria.*

It may so reduce the grade of a street as in O'Connor vs. Pittsburgh, as to cut off all access to property, or elevate it to such a height as to accomplish the same result to abutting owners. But it can scarcely be permitted to deal in this fashion with private ways, or with dedicated streets it has never accepted or intended to accept. Let us look for a moment at the facts.

The ordinance empowered the Belt Company after passing Mt. Royal avenue to locate its road "thence in a northerly direction by such line as the company may adopt across Jones' Falls, &c." Thus giving them *carte blanche* to enter upon any streets over

which the city was entitled to exercise control. When the company reached the point in question, it found Townsend street, unmistakably a public street, and opening from it a *cul de sac*, called Elm street, extending sixty or seventy yards to the line of the property the commissioners in the partition proceedings had laid out. It was open at its intersection with Townsend street and closed at the other end, and binding upon it were the plaintiff's lots, and others which the defendant's bought outright. The city had never graded or paved it or recognized it in any way as a public street—in other words, although the owner had dedicated it to public use, the city had never indicated the slightest intention to accept it. On the contrary it had levied taxes upon it each year, and the lot owners had paid them, and up to that moment, both *before and since* the passage of the ordinance, had dealt with it as private property. The one single act of dominion it ever exercised over it, was to arm the railroad company with authority to enter upon and destroy it, and in no other way has the city recognized it, except for purposes of taxation. Now, admitting that there is no formal method of acceptance necessary on the part of the city when a street is dedicated to public use, it must indicate its purpose in some way to adopt it, or there must be a public user of it for a period of twenty years.

The law is well stated in Kennedy vs. M. & C. C. of Cumberland, 65 Md. 520. Said the learned judge who delivered the opinion, "from these facts a dedication of the bed of this street to the public by Shriver and his grantees, is no doubt established, but it requires something more to create the privileges and duties belonging to a public highway. Any individual may lay out a thoroughfare through his lands but such dedication does not impose upon the county or municipality the duty of improving or keeping it in repair. There must be an *acceptance* of the dedication before this duty can arise." The law on this subject is stated by Judge Dillon: "As against the proprietors a dedication of land for streets and highways may be complete without any act of acceptance on the part of the public; but in order to charge the municipality or local dis-

trict with the duty of repair or to make it liable for injuries for suffering the street or highway to be or remain defective, there must be an acceptance of the dedication, and this *acceptance must be by the proper or authorized local public authorities*. It may be express, and appear of record, or it may be implied from repairs made and ordered, or knowingly paid for by the authority which has the legal power to adopt the street or highway, or from long use by the public." 2 Dillon on Mun. Corp., Sec. 642.

Granting that the city might at any moment have taken possession of Elm street and graded any part of it as best suited its purpose, or could, by designating it as a public street in the ordinance, have authorized the railroad company to locate its line upon it, which may well be doubted, the fact is that no such act on the part of the city was ever done, and no such authority ever granted. Elm street is not mentioned in the ordinance, and when the defendant company entered upon it, it did for the city, upon the theory of acceptance, what the city never did for itself, or authorized anyone else to do for it.

It must be borne in mind that it is not now the city which asserts the claim; it is the railroad company which is setting up for the city, rights it never claimed for itself.

Look for a moment at the consequences which must ensue if this proposition be sound. More than half this short open space will be dug away by the company defendant, and entirely destroyed as a highway. The remaining part, which will really be only a court, closed at both ends on which bind the plaintiff's lots, will be part of an accepted street, and as such the city will have to maintain it. Can it be supposed the city ever intended to place itself in such a position? it is not much more reasonable to suppose that it never meant to authorize the company to go upon Elm street at all, or to make it the agent of the city in accepting a highway, if such authority could be delegated, it had always considered worthless for all public purposes.

Dedication, as is well settled, is a matter of intention and so is acceptance. The one is inferred from platting land, laying out streets and lots

upon it, and selling the lots with reference to the plat. But a municipality is not bound to accept every open space a man sees proper to dedicate to public use, because with acceptance comes responsibility, and until acceptance by some act indicating a purpose to accept, 'there is .no responsibility, and the dedicated alley or street or square or whatever it may be, remains so far as the public is concerned, private property. This is the universal rule as to all common law dedications. In statutory dedications, a different rule may of course, govern.

If this conclusion be correct, then the company defendant was without authority to take possession of Elm street under the city ordinance, and must be restrained from going on with its work until it has acquired, either by agreement or condemnation, the plaintiff's right of way over it.

In considering this case, I have not been entirely clear that there ever was an intention to dedicate Elm street to public use, although the case has been argued upon that assumption throughout. Dedication as I before said, is always a matter of intention, and bearing in mind the character of the proceeding in which the street is designated, the character of the street itself—a mere blind way open at one end closed at the other—co-extensive only with the apportioned lots, and serving no possible public purpose, is it a necessary implication that such a street, so situated, was intended for public use? The report of the commissioners in the partition proceedings and the deeds, are silent upon this subject; it rests exclusively upon the presumption of law.

Said the late Justice Miller, in the case of Pitts vs. M. & C. C. of Baltimore, 73 Md. 333, in speaking of such dedication, "but the implication of such a covenant may be rebutted in many ways, as by other express covenants or agreements between the parties, or by the fact that the call for the street *was made merely for the purpose of convenient description of boundaries, as in the case of the partition of an estate among heirs, or by any other facts and circumstances showing the absence of an intention to devote to public use.*" I do not mean to say that a *cul de sac* may not be dedicated as a public street, for it may end at a river or a precipice or at some other point where it will necessarily be closed, but I do mean to say that the peculiar location of this street, marked on a plat in the partition of land, obviously to mark the boundaries of lots and afford a means of getting to and from them, and not possible of use as a public highway, may well rebut the presumption that it was ever intended to be used as a public street. I shall not pursue the inquiry further, however, as the case must be decided on other grounds.

The question as to Townsend street is entirely different. The ordinance gives the defendants power to go "over, across, in, along, or under the highways, streets, lanes and alleys," in this part of the city. This embraces Townsend street, across which they have made an excavation. They claim authority to leave it open when the work is finished, but it may well be doubted if the city ever intended to permit the public streets to be permanently mutilated in this way. Such an intention would have to be clearly expressed; it could not be inferred. The question was practically decided in Leopard's case, in 1 Gill, and in C. & O. C. Co. vs. Allegany Co., in 57 Md. 218.

In addition to this, Section 4 of the ordinance provides that "if in constructing said railroad or tunnel across or under any highways, streets and alleys, it shall become necessary to excavate the same, or to take up any pavement thereon, then and in that event, the Baltimore Belt R. R. Co. shall restore the surface of said highways, streets and alleys to the same condition in which they were before being interfered with by said company," &c.

Apart, then, from the general law, the city seems to have imposed this duty of restoration and repair upon the defendants.

But it will be quite time enough to raise this question when the work on Townsend street is finished. It is now in progress, and the injunction as to that part of the work will be dissolved, and so much of the bill as refers to it, dismissed.

It must be borne in mind in this connection that the plaintiff's right-of-way is over Elm street, and not Townsend. It ends, indeed, at Townsend. I do not, therefore, see that he is en-

titled to any other remedy than that given him by Section 169 of Article 23 of the Code, which applies to injuries done by railroad companies to property "lying upon or *near*" to such location.

But I do not mean to decide this question for the present—it is premature to do so. A decree will, therefore, be signed continuing the injunction as to Elm street and dismissing the remainder of the bill. The defendants to pay the costs of this proceeding.